NOTICE

Decision filed 02/26/09. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-07-0161

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

THE PEOPLE OF THE STATE OF ILLINOIS,) Appeal from the
) Circuit Court of
    Plaintiff-Appellant, ) Pulaski County.
)
v. ) No. 06-CF-39
)
CHAD SPURLOCK, ) Honorable
) William J. Thurston,
    Defendant-Appellee. ) Judge, presiding.
_____

JUSTICE STEWART delivered the opinion of the court:

The State of Illinois appeals from an order of the circuit court of Pulaski County, Illinois, dismissing criminal charges and dismissing a petition filed under the Sexually Dangerous Persons Act (the Act) (725 ILCS 205/0.01 *et seq.* (West 2006)). The circuit court's dismissal of the proceedings was based on a violation of the speedy trial statute (725 ILCS 5/103-5 (West 2006)). This appeal presents an issue of first impression: whether the filing of a petition under the Act stays the underlying criminal proceeding, including the time allowed to commence the defendant's trial under the speedy trial statute. Considering the language and history of the statutes involved, we hold that the filing of a petition under the Act stays the criminal proceeding, including the statutory speedy trial period, during the pendency of the proceedings under the Act. Accordingly, we reverse the circuit court's dismissal order and remand for further proceedings.

BACKGROUND

On March 30, 2006, the State charged the defendant, Chad Spurlock, with two counts of criminal sexual assault and one count of intimidation. The defendant was arrested and

1

taken into custody the same day, and he remained in custody throughout the proceedings in the circuit court. On May 11, 2006, the defendant made an oral motion for a fitness examination, and the circuit court entered an order on May 17, 2006, granting the fitness examination. On July 10, 2006, the circuit court conducted a fitness hearing pursuant to section 104-16 of the Code of Criminal Procedure of 1963 (725 ILCS 5/104-16 (West 2006)), and the court found the defendant unfit to stand trial. The circuit court remanded the defendant to the Department of Human Services for treatment.

At a hearing held on October 16, 2006, the circuit court found that the defendant had been rehabilitated by his treatment and that he was fit to stand trial. The trial court scheduled the defendant's jury trial to begin on November 27, 2006. At that point, 34 days had passed for speedy trial purposes, and the State and the defendant agreed that the November 27, 2006, trial setting was timely under the defendant's statutory speedy trial rights. On November 6, 2006, however, the State filed a petition pursuant to the Act to have the defendant declared a sexually dangerous person. Under the Act, if a jury finds the defendant to be a sexually dangerous person, he is committed to the custody of the Director of Corrections for care and treatment and does not face criminal punishment for the charged criminal offenses. 725 ILCS 205/8, 9 (West 2006).

At a pretrial hearing held on November 6, 2006, the circuit court stated, "I believe under the statute [the sexually dangerous persons petition] immediately puts a stop to the proceedings that are occurring in the criminal case which is [No.] 06-CF-39." The trial court stated that it was removing the criminal case from the November jury docket, and the defendant's attorney stated: "[S]ince the petition has been filed, we cannot object as far as tolling. But I would bring to the Court's attention the fact that my client is in custody, and he does have a right to a speedy trial."

On January 8, 2007, the State filed a request for the sexually dangerous persons

2

petition to be docketed for a jury trial. The State's motion alleged that the speedy trial statute (725 ILCS 5/103-5 (West 2006)) required a trial on the criminal charges before March 7, 2007. The State, therefore, requested a February 2007 trial setting on the sexually dangerous persons petition to avoid any conflict with the speedy trial statute. On January 12, 2007, the defendant filed a motion to dismiss the sexually dangerous persons petition pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2006)). The issues the defendant raised in his motion to dismiss were unrelated to the speedy trial statute.

At a January 29, 2007, status hearing, the court scheduled the jury trial on the sexually dangerous persons petition for February 26, 2007. The court scheduled a hearing on the defendant's motion to dismiss the petition for February 15, 2007. The defendant's attorney told the trial court that he would also like the criminal case to "be called up" at the February 15 hearing. The State told the court that, under the Act, if the defendant was found to be a sexually dangerous person, the State would be precluded from proceeding with the underlying criminal charges. The State maintained, therefore, that the sexually dangerous persons petition "tabled" the criminal case. The defendant, however, argued that the case involved two separate proceedings and that the criminal case was still ongoing. The court did not make any determination on that issue at the January 29, 2007, hearing and directed the defendant to file a motion if he believed he was entitled to any relief.

On February 15, 2007, the parties appeared in court on the defendant's motion to dismiss the sexually dangerous persons petition, and the circuit court denied the motion. The State requested the court to set a deadline for any further motions in the sexually dangerous persons proceeding, but the defendant's attorney stated that he intended to utilize "each and every" discovery option available for civil cases, including interrogatories, requests to admit facts, and depositions. The defendant, therefore, requested a continuance in the sexually dangerous persons proceeding, but he wanted to "stand firm" on the trial date

3

for the criminal matter and not waive his right to a speedy trial. The State again argued that the filing of the sexually dangerous persons petition "tabled" the criminal case. The defendant countered that the State could enter a *nolle prosequi* in the criminal case if it could not proceed with the sexually dangerous persons petition before the expiration of the 120-day speedy trial period. The State disagreed, noting that the Act required pending criminal charges and that the criminal charges would no longer be pending if it entered a *nolle prosequi*.

The trial court stated that it had not found any authority which indicated that the filing of the sexually dangerous persons petition tolled the defendant's statutory speedy trial rights on the underlying criminal charges. The trial court concluded that, in the absence of case law, it was going to err "on the side of protecting the speedy trial demand." Therefore, the court found that the filing of the sexually dangerous persons petition did not toll the running of the defendant's statutory speedy trial period. The State told the court that it would be ready to proceed with a trial on the sexually dangerous persons petition on the scheduled February 26, 2007, trial date. The defendant argued that since the trial court had just denied his motion to dismiss, he needed time to answer the sexually dangerous persons petition and conduct discovery before a trial on the sexually dangerous persons petition.

At the conclusion of the February 15, 2007, hearing, the circuit court set the criminal case for a jury trial on March 26, 2007, which the court determined to be timely under the defendant's statutory speedy trial rights. The court also stated that the State had the right to a trial on the sexually dangerous persons petition prior to a trial on the criminal charges. Therefore, the trial court stated that it would accommodate a trial on the sexually dangerous persons petition prior to a trial on the criminal charges. The court granted the defendant's motion to continue the February 26, 2007, trial setting on the sexually dangerous persons petition, and the court reset the matter for a scheduling conference on February 20, 2007.

On February 20, 2007, the State filed a motion to reconsider the setting of the criminal matter for trial. The State argued in its motion that whether to prosecute the defendant or seek treatment for him under the Act is a matter of the prosecution's discretion and that once filed, the sexually dangerous persons proceeding was in lieu of a prosecution. The State's motion noted that a key witness in the sexually dangerous persons proceeding would be out of the country the week of March 15, 2007. The State requested that the circuit court place the trial on the sexually dangerous persons petition back on the February 26, 2007, docket or continue the trial on the defendant's motion to a time fair to both parties. On February 20, 2007, the defendant filed a motion to dismiss the criminal complaint for a violation of the speedy trial statute.

On February 20, 2007, the circuit court conducted a scheduling conference. The court again held that the filing of the sexually dangerous persons petition did not toll the running of the 120-day speedy trial period on the underlying criminal offense. The circuit court scheduled the trial on the sexually dangerous persons petition for March 26, 2007, the same day on which the criminal trial was set to begin. The court set the matter for a final pretrial conference for March 20, 2007, at which time the court would give the defendant the option of going to trial on the sexually dangerous persons petition or on the criminal charges.

At a pretrial hearing held on February 26, 2007, the court addressed the defendant's motion to dismiss the criminal charges based on the speedy trial statute. The circuit court calculated that 101 days had expired for speedy trial purposes up to that point in the proceedings. The court, therefore, denied the defendant's motion to dismiss the criminal case based on the speedy trial statute, but the court noted that the speedy trial period would expire by the March 26, 2007, trial date. The court, therefore, stated that it was prepared to make a special trial setting the following day, February 27, 2007, and offered the State the

5

opportunity to proceed to trial on the criminal case the following day. The court stated that the sexually dangerous persons petition would remain on the March docket, and the court concluded that it was not possible to try the sexually dangerous persons petition prior to the criminal case because of the approaching speedy trial deadline in the criminal case.

The defendant announced that he was ready to go to trial on the criminal charges, but the State said it wanted to go to trial on the sexually dangerous persons petition, not the criminal charges. The court stated that the sexually dangerous persons petition would remain on the March docket. The State told the court that it was not going to proceed with the criminal matter on February 27, 2007, because it was inappropriate to force a trial on the criminal complaint prior to hearing the sexually dangerous persons petition. Accordingly, the State said it would not present any evidence if the criminal case was called to trial on February 27, 2007. The State requested a continuance of the criminal matter, and the trial court granted the State's request for a continuance over the defendant's objection. The court continued the criminal matter to the March 26, 2007, jury docket.

On March 5, 2007, the State made a final attempt to have the sexually dangerous persons petition docketed. The State filed a request to docket the petition for trial prior to the expiration of the speedy trial term on March 17, 2007, but the defendant objected, maintaining that he had inadequate time to prepare for trial on the sexually dangerous persons petition. On March 7, 2007, the circuit court denied the State's request to docket the petition. On March 19, 2007, the defendant filed an amended motion to dismiss the criminal complaint based on an alleged violation of the defendant's statutory speedy trial rights. The circuit court granted the motion. The court dismissed the criminal complaint, and the court dismissed the sexually dangerous persons petition since there was no longer an underlying criminal complaint. The State filed a timely notice of appeal.

6

DISCUSSION

The State contends that the trial court improperly dismissed the proceedings under the speedy trial statute. The circuit court's erroneous dismissal, the State argues, stems from the trial court improperly moving forward with the criminal proceeding and the sexually dangerous persons proceeding simultaneously. The State asserts that by separating the case into two different proceedings, the court allowed the defendant to delay the sexually dangerous persons proceeding with civil discovery requests while, at the same time, asserting his statutory speedy trial rights in the criminal case. The State argues that, to give effect to the legislature's intent, the statutes must be construed to provide for a suspension of the running of the criminal proceeding's speedy trial term upon the filing of a sexually dangerous persons petition. The defendant, however, argues that there is no language in the Act or in the speedy trial statute which provides for a stay of the 120-day speedy trial period when the State files a sexually dangerous persons petition. The defendant concludes that the circuit court correctly dismissed the proceedings because he was not brought to trial on the criminal charges within the speedy trial time provided by statute. We agree with the State's argument and hold that the legislature intended for a tolling of the statutory speedy trial period upon the filing of a sexually dangerous persons petition.

To resolve this issue on appeal, we must construe the speedy trial statute and the Act in a way that puts into effect the legislature's intent. Our review of issues involving statutory construction is *de novo* and is guided by well-established rules. *In re Detention of Lieberman*, 201 Ill. 2d 300, 307, 776 N.E.2d 218, 223 (2002). The principal objective of statutory construction is to determine and give effect to the legislature's intent. *In re Detention of Powell*, 217 Ill. 2d 123, 135, 839 N.E.2d 1008, 1015 (2005). "All other rules of statutory construction are subordinate to this cardinal principle." *In re Detention of Powell*, 217 Ill. 2d at 135, 839 N.E.2d at 1015.

The best evidence of the legislative intent is the language of the statute itself, and the language should be "given its plain, ordinary[,] and popularly understood meaning." *In re Detention of Powell*, 217 Ill. 2d at 135, 839 N.E.2d at 1015. The words and phrases contained within the language of a statute should not be considered in isolation but must be interpreted in light of other relevant provisions and the statute as a whole. *Williams v. Staples*, 208 Ill. 2d 480, 487, 804 N.E.2d 489, 493 (2004). If possible, we must give effect to every word, clause, and sentence and must not construe a statute in a way that renders any part inoperative, superfluous, or insignificant. *Bauer v. H.H. Hall Construction Co.*, 140 Ill. App. 3d 1025, 1028, 489 N.E.2d 31, 33 (1986). We presume that the legislative intent did not include absurdity, inconvenience, or injustice. *In re Detention of Powell*, 217 Ill. 2d at 135, 839 N.E.2d at 1015.

In addition to the statutory language, the courts may consider the purpose behind the law and the evils sought to be remedied, as well as the consequences that would result from construing the law one way or the other. *Williams*, 208 Ill. 2d at 487, 804 N.E.2d at 493. When more than one statute is at issue, we must construe the statutes in harmony with each other when reasonably possible, even when they are in apparent conflict. *People v. Maya*, 105 Ill. 2d 281, 287, 473 N.E.2d 1287, 1290 (1985). "It is a canon of statutory construction that where the passage of a series of legislative acts results in confusion and consequences which the legislature may not have contemplated, courts must construe the acts in such a way as to reflect the obvious intent of the legislature and to permit practical application of the statutes." *People ex rel. Community High School District No. 231 v. Hupe*, 2 Ill. 2d 434, 448, 118 N.E.2d 328, 335 (1954). The courts may "alter, supply[,] or modify words and correct obvious mistakes" in order to "effectuate the intent of the legislature." *People v. Garrison*, 82 Ill. 2d 444, 455, 412 N.E.2d 483, 489 (1980). When a statute is capable of more than one reasonable interpretation, the statute will be deemed ambiguous, and the court

may consider extrinsic aids to construction, such as legislative history. *People v. Collins*, 214 Ill. 2d 206, 214, 824 N.E.2d 262, 266 (2005).

With these principles in mind, we first look to the relevant language of the statutory provisions at issue to determine the legislative intent with respect to sexually dangerous persons proceedings in relation to the statutory speedy trial time limit. The speedy trial statute provides that a defendant in custody must be tried "within 120 days from the date he was taken into custody." 725 ILCS 5/103-5(a) (West 2006). The sixth amendment and the due process clause of the United States Constitution and section 8 of article I of the Illinois Constitution guarantee a defendant the right to a speedy trial. U.S. Const., amends. VI, XIV, §1; Ill. Const. 1970, art. I, §8. Illinois's speedy trial statute implements this constitutional right. *People v. Gooden*, 189 Ill. 2d 209, 216-17, 725 N.E.2d 1248, 1252 (2000). However, "the constitutional right and the statutory right are not coextensive." *Gooden*, 189 Ill. 2d at 217, 725 N.E.2d at 1252.

A defendant who is not tried within the time period designated by the speedy trial statute must be discharged from custody, and the charges must be dismissed. 725 ILCS 5/103-5(d) (West 2006); *People v. Kliner*, 185 Ill. 2d 81, 114-15, 705 N.E.2d 850, 869 (1998). The statute includes a list of circumstances that suspend the statutory 120-day term and allow a defendant in custody to be brought to trial beyond 120 days. These enumerated exceptions include delay occasioned "by the defendant, by an examination for fitness ordered pursuant to Section 104-13 of [the Code of Criminal Procedure of 1963], by a fitness hearing, by an adjudication of unfitness to stand trial, by a continuance allowed pursuant to Section 114-4 of [the Code of Criminal Procedure of 1963] after a court's determination of the defendant's physical incapacity for trial, or by an interlocutory appeal." 725 ILCS 5/103-5(a) (West 2006). A separate section of the statute expressly provides for tolling the speedy trial term for any delay "occasioned by the defendant." 725 ILCS 5/103-

5(f) (West 2006).

The legislature's enumerated exceptions do not expressly include a suspension of the 120-day speedy trial term for an examination ordered pursuant to the Act or a hearing on a sexually dangerous persons petition. Our analysis does not end here, however, because our objective is to ascertain the intent of the legislature and to construe the statute in a manner that gives effect to the legislative intent. This analysis requires us to consider the speedy trial statute in conjunction with the language, objective, and purpose of the Act. The legislative path leading to the Act evidences a legislative intent to establish rehabilitation as an alternative to criminal punishment. We believe that in order to carry out this purpose, the legislature intended that the filing of a sexually dangerous persons petition would result in a stay of any further proceedings on the criminal complaint until a resolution of the issues raised in the sexually dangerous persons petition.

The predecessor to the Act was enacted in 1938, and it provided for the commitment and detention of "criminal sexual psychopathic persons." Ill. Rev. Stat. 1939, ch. 38, par. 820 *et seq*. The 1938 statute defined criminal sexual psychopathic persons as "[a]ll persons suffering from a mental disorder, and not insane or feebleminded, which mental disorder has existed for a period of not less than one (1) year, immediately prior to the filing of the petition hereinafter provided for, coupled with criminal propensities to the commission of sex offenses." Ill. Rev. Stat. 1939, ch. 38, par. 820. The law applied to persons who were charged with a crime and who were not yet convicted. *People ex rel. Elliott v. Juergens*, 407 Ill. 391, 394, 95 N.E.2d 602, 603 (1950). If it appeared to the State's Attorney that a defendant with pending criminal charges was a criminal sexual psychopath, as that term was defined under this statute, the State's Attorney could file a petition in the criminal proceeding and request two qualified psychiatrists to examine the defendant and file a report. Ill. Rev. Stat. 1939, ch. 38, pars. 822, 823. The statute specifically provided for a trial by jury on the

10

petition "[b]efore trial on the criminal offense." Ill. Rev. Stat. 1939, ch. 38, par. 824. If the jury found the accused to be a criminal sexual psychopath, the accused was confined with the Department of Public Welfare for treatment. Ill. Rev. Stat. 1939, ch. 38, par. 824. Finally, the 1938 statute provided for a discharge of the defendant upon a jury finding that he had recovered from his "psychopathy," at which time he was to be committed to the custody of the sheriff to stand trial for the criminal offense charged against him. Ill. Rev. Stat. 1939, ch. 38, par. 825; *People v. Sims*, 382 Ill. 472, 474, 47 N.E.2d 703, 704 (1943).

When this statute was enacted in 1938, its purpose was similar to the purpose of "statutes providing for an inquiry into the sanity of one charged with crime before trial on the indictment." *People v. Redlich*, 402 Ill. 270, 275, 83 N.E.2d 736, 739 (1949). The proceeding had no connection with determining the defendant's guilt or innocence. *Redlich*, 402 Ill. at 276, 83 N.E.2d at 740. The statute was an enlargement of the common law rule that an insane person "could not be required to plead to an indictment or be placed upon his trial for the crime charged." *Redlich*, 402 Ill. at 275, 83 N.E.2d at 739. The legislature enlarged the common law rule to include persons who were not insane but were suffering from a mental disorder described in the statute. *Redlich*, 402 Ill. at 275, 83 N.E.2d at 740. The "sole object of the proceeding [was] to ascertain the mental condition of the accused *** so as to determine if he should be required to plead to the indictment and be placed upon trial for the offense charged." *Redlich*, 402 Ill. at 276, 83 N.E.2d at 740.

At the time the 1938 statute was enacted, the speedy trial statute required the State to try a defendant in custody within four months from the date he was taken into custody. Ill. Rev. Stat. 1939, ch. 38, par. 748. The 1938 statute, however, did not contain a deadline for the State to file a petition under the statute, and it did not incorporate any deadline for conducting a hearing on the petition. The statute's only requirement was that there "shall" be a hearing on the defendant's mental condition "[b]efore trial on the criminal offense." Ill.

11

Rev. Stat. 1939, ch. 38, par. 824. The proceeding was "preliminary to [a] trial upon the indictment," and the legislative intent "was to prevent a person afflicted with such mental disorder from being tried for a criminal offense until he had recovered from such psychopathy." *Redlich*, 402 Ill. at 276, 83 N.E.2d at 740.

In *Redlich*, the supreme court alluded to the practice under the 1938 statute of staying the criminal proceeding in order to carry out this legislative intent. The supreme court in *Redlich* emphasized the necessity of a hearing on the defendant's mental condition prior to the criminal trial. The court stated: "A determination of [a defendant's] mental condition in [a proceeding under the statute] could serve no purpose and have no legal effect after [the defendant's] trial and conviction. His trial for the criminal offense cannot be *stayed* if it has already taken place." (Emphasis added.) *Redlich*, 402 Ill. at 276, 83 N.E.2d at 740. The 1938 statute did not contain any provision for staying the criminal proceeding, but this language in *Redlich* indicates that the practice under the 1938 statute was to stay the criminal trial until a determination of the defendant's mental condition. This procedure served the legislative purpose of preventing a person afflicted with a mental disorder from being tried for a criminal offense until he had recovered from his mental disorder. Therefore, it is evident that in enacting the 1938 statute, the legislature did not contemplate two separate proceedings simultaneously progressing on two different tracks.

The language of the 1938 statute remained largely unchanged until 1955, when the legislature significantly amended the statute. Ill. Rev. Stat. 1955, ch. 38, par. 820.01 *et seq*. The 1955 amendment referred to the accused as a sexually dangerous person rather than a criminal sexual psychopathic person. The 1955 amendment added a new section clarifying that proceedings under the statute are civil in nature. Ill. Rev. Stat. 1955, ch. 38, par. 822.01. Despite being civil in nature, the legislature added the right to a trial by jury and the right to have an attorney present. Ill. Rev. Stat. 1955, ch. 38, par. 824. Finally, the

legislature deleted the language requiring the accused to be committed to the custody of the sheriff to stand trial on the crimes charged against him upon discharge. Ill. Rev. Stat. 1955, ch. 38, par. 825c. After the 1955 amendment, the statute provided for the sexually dangerous person to be conditionally released upon recovery from his mental disorder, but it was silent on whether he would still stand trial on the prior criminal charges. Ill. Rev. Stat. 1955, ch. 38, par. 825c. In 1963, the legislature amended the statute to expressly state that "[u]pon *** discharge every outstanding information and indictment, the basis of which was the reason for the present detention, shall be quashed." Ill. Rev. Stat. 1963, ch. 38, par. 105-9.

These amendments to the Act reflected a change in the legislative purpose of the Act from punishment to rehabilitative treatment. *People v. Trainor*, 196 Ill. 2d 318, 324, 752 N.E.2d 1055, 1059 (2001). The statutory scheme no longer provides for the treatment and recovery of the accused before having to plead or stand trial. Instead, the Act now provides for treatment and recovery in lieu of a criminal prosecution, and the Act's goal is to grant the sexually dangerous person an opportunity to receive help for his propensity to commit sexual offenses. *People v. Galba*, 273 Ill. App. 3d 95, 100-01, 652 N.E.2d 400, 404-05 (1995). The supreme court has stated that the purpose of the Act is to prevent mentally ill persons from being held criminally responsible for crimes committed while mentally ill. *People v. Allen*, 107 Ill. 2d 91, 105, 481 N.E.2d 690, 697 (1985), *aff'd*, *Allen v. Illinois*, 478 U.S. 364, 92 L. Ed. 2d 296, 106 S. Ct. 2988 (1986).

To give effect to this legislative purpose, we must construe the Act to provide for a stay of proceedings on the criminal complaint upon the filing of a sexually dangerous persons petition, until the issues concerning the accused's mental status are resolved. The stay of the criminal proceeding must necessarily include a stay of the running of the speedy trial term. Otherwise, the speedy trial statute may defeat the legislative purpose outlined

13

above. An expiring speedy trial term could force a sexually dangerous person to stand trial on the criminal charges before there has been a determination of his mental condition and an opportunity for treatment and rehabilitation. Alternatively, if the underlying criminal charge is dismissed on speedy trial grounds, the sexually dangerous persons petition must, likewise, be dismissed because a person cannot be committed as a sexually dangerous person after the resolution of the underlying criminal charge. Both results are plainly contrary to the statutory scheme of treatment and rehabilitation.

Whether to proceed with a sexually dangerous persons proceeding rests within the discretion of the State's Attorney, and the supreme court has stated that the proceedings are "in lieu of a criminal prosecution." *People v. Lawton*, 212 Ill. 2d 285, 288, 818 N.E.2d 326, 329 (2004). "In lieu of" is defined as follows: "Instead of; in place of; in substitution of. It does not mean 'in addition to.' " Black's Law Dictionary 787 (6th ed. 1990). The legislature did not intend for both the criminal proceeding and the sexually dangerous persons commitment proceeding to go forward simultaneously on separate tracks. The legislature intended for the State to "disavow[] any interest in punishment" by electing to proceed under the Act. *Allen v. Illinois*, 478 U.S. 364, 370, 92 L. Ed. 2d 296, 305, 106 S. Ct. 2988, 2992 (1986).

The procedural history of the present case highlights the importance of a stay of the criminal proceeding in order to give effect to the legislative intent. The defendant in the present case maintained that he was ready for trial on the criminal charges and insisted on compliance with the statutory 120-day speedy trial time limit. At the same time, he maintained that he was not ready to proceed on the sexually dangerous persons petition, insisted on a trial setting beyond the 120-day time period, and delayed the jury trial on the sexually dangerous persons petition with pretrial motions and discovery requests. The defendant prevented a hearing on the sexually dangerous persons petition before the

14

expiration of the 120-day speedy trial term on the underlying criminal charges. The lack of a stay of the criminal proceeding, therefore, defeated the State's ability to proceed on the sexually dangerous persons petition and nullified the legislative intent of the Act to provide the defendant with treatment and rehabilitation.

These facts illustrate that the State is unable to implement the Act in the manner the legislature intended without a stay of the underlying criminal proceeding. The Act cannot function properly without a stay. The State's Attorney cannot file a sexually dangerous persons petition until it appears that an accused is a sexually dangerous person as defined under the Act (725 ILCS 205/3 (West 2006)). The facts necessary to make this determination may not be available to the State until sometime after the accused has been taken into custody on the criminal offense and after some portion of the speedy trial term has expired. Once it appears to the State that an accused is a sexually dangerous person, the prosecution must then prepare the sexually dangerous persons petition and obtain an order from the circuit court appointing two qualified psychiatrists to make a personal examination of the accused. 725 ILCS 205/3, 4 (West 2006). The psychiatrists must then examine the defendant and file their reports before a hearing under the Act may begin. 725 ILCS 205/4 (West 2006). Accordingly, no matter how diligent, the State cannot always be ready for a hearing under the Act within the 120-day speedy trial time limit.

In addition, even when the State is ready to proceed within the 120-day time period, the defendant has the ability to delay the sexually dangerous persons trial beyond the 120-day time period with pretrial motions, discovery, and requests for continuances. Under those circumstances, without a stay of the speedy trial time limit, a defendant's mental status and his need for treatment would never be determined, contrary to legislative intent. The underlying charges would be dismissed on speedy trial grounds before a hearing on the sexually dangerous persons petition could be conducted; alternatively, the State would be

15

forced to abandon the sexually dangerous persons petition and proceed with a trial on the criminal offense to avoid a dismissal. The legislature intended a hearing on the sexually dangerous persons petition prior to a criminal trial, and a stay of the criminal proceeding is necessary to give effect to this legislative purpose.

Although the speedy trial statute does not expressly provide for a tolling of the speedy trial period during the pendency of a sexually dangerous persons petition, we believe that the overall statutory scheme and legislative history outlined above evidences the legislature's intent for tolling the speedy trial term and staying the criminal proceeding. When the legislative intent is evident, we are obligated to construe statutes in accordance with that intent, "for the 'intention of the law-makers is the law.' " *R.E. Joos Excavating Co. v. Pollution Control Board*, 58 Ill. App. 3d 309, 311, 374 N.E.2d 486, 489 (1978) (quoting *Smith v. County of Logan*, 284 Ill. 163, 165, 119 N.E. 932, 933 (1918)). While courts are generally cautious about adding words to a statute, they will read into the meaning of a statutory provision " 'a qualifying or expanding expression plainly implied by the general context of the act, which has been palpably omitted and which is necessary to prevent the legislative purpose from failing in one of its material aspects.' " *R.E. Joos Excavating Co.*, 58 Ill. App. 3d at 313, 374 N.E.2d at 489-90 (quoting *People ex rel. Barrett v. Anderson*, 398 Ill. 480, 485, 76 N.E.2d 773, 776 (1947)). The speedy trial statute must be construed to give effect to the legislature's intent when a sexually dangerous persons petition is filed, even if the words of the statute must be read as modified or altered so as to comport with the legislative intent. *People ex rel. Community High School District No. 231 v. Hupe*, 2 Ill. 2d 434, 448, 118 N.E.2d 328, 335 (1954).

We find support for our analysis in *People v. Benson*, 19 Ill. 2d 50, 166 N.E.2d 80 (1960). In 1957, the speedy trial statute did not expressly provide for a tolling of the statutory speedy trial right in order to inquire into the sanity of a defendant. Ill. Rev. Stat.

16

1957, ch. 38, par. 748. The supreme court in *Benson*, nonetheless, held that "ascertaining a defendant's sanity and mental capacity to be subjected to criminal prosecution is a permissible delay which does not impair or infringe upon the constitutional right to a speedy trial[] or violate the statute enacted to implement the constitutional provision." *Benson*, 19 Ill. 2d at 55, 166 N.E.2d at 83.

We hold that proceedings under the Act suspend the running of the statutory speedy term in the underlying criminal case. We also agree with the holding in *In re Detention of Hughes*, 346 Ill. App. 3d 637, 646-47, 805 N.E.2d 725, 732 (2004), that the speedy trial statute does not apply to sexually dangerous persons proceedings. We are not unmindful that an accused in a sexually dangerous persons proceeding will often be held in custody while the sexually dangerous persons petition is pending. Our holding does not leave these defendants without speedy trial protections. Although the accused does not have a statutory right to a speedy trial, the accused has a constitutional right to due process, and due process includes a right to a speedy trial in the sexually dangerous persons proceeding. *In re Detention of Hughes*, 346 Ill. App. 3d at 647, 805 N.E.2d at 733 (citing *People v. Trainor*, 196 Ill. 2d 318, 328-29, 752 N.E.2d 1055, 1061 (2001)). This is a right conferred by the United States Constitution, not conferred by the legislature. Although the constitutional speedy trial right is not as specific as the statutory speedy trial right, it is nonetheless a protection against arbitrary and oppressive delays during the pendency of the sexually dangerous persons proceeding.

The defendant cites *People v. Beshears*, 65 Ill. App. 2d 446, 213 N.E.2d 55 (1965), in support of the circuit court's dismissal of the criminal charges and the sexually dangerous persons proceeding. In *Beshears*, the court dismissed a sexually dangerous persons petition, but the holding was based on the constitutional due process right to a speedy trial, not on the speedy trial statute. *Beshears*, 65 Ill. App. 2d at 459, 213 N.E.2d at 61 ("it is quite clear how

17

the requirements of due process were violated"); see *In re Detention of Hughes*, 346 Ill. App. 3d at 647, 805 N.E.2d at 733 (distinguishing *Beshears*). *Beshears*, therefore, does not support the circuit court's holding that the statutory speedy trial period continues to run while the sexually dangerous persons petition is pending.

The defendant argues, alternatively, that he was denied his constitutional right to a speedy trial. He did not assert a constitutional claim in the circuit court, and the record does not support this assertion on appeal. Our courts have identified four factors that must be balanced in determining whether a defendant's right to a speedy trial has been violated: the length of the delay; reasons for the delay; prejudice, if any, to the defendant; and the defendant's assertion of the right. *In re Detention of Hughes*, 346 Ill. App. 3d at 649, 805 N.E.2d at 734-35 (citing *People v. Crane*, 195 Ill. 2d 42, 48, 743 N.E.2d 555, 560 (2001)).

We hold that the defendant was not denied his constitutional right to a speedy trial in the sexually dangerous persons proceeding. On February 26, 2007, the State announced that it was ready to proceed to a trial on the sexually dangerous persons petition, and it requested that the trial court set the sexually dangerous persons trial prior to March 17, 2007. The State made several requests for a timely setting on the sexually dangerous persons petition. The defendant, however, caused delay in the sexually dangerous persons proceeding by objecting to a trial setting before March 17, 2007. The defendant stated that he would not be ready for trial and requested additional time. On appeal, the defendant argues that the State unreasonably delayed the filing of the sexually dangerous persons petition until November 6, 2006. However, the State filed the petition 21 days after the defendant was found fit to stand trial. We do not find any unreasonable delay in the filing of the sexually dangerous persons petition, and there is no evidence of bad faith on the part of the State in the timing of the filing of the sexually dangerous persons petition. Furthermore, the defendant has not established any prejudice to the defense of his case, and

we can find no prejudice in the record.

Weighing the relevant factors, we hold that the defendant was not denied his constitutional right to a speedy trial. In addition, we hold that the filing of the sexually dangerous persons petition stayed the underlying criminal proceeding and tolled the running of the speedy trial statute. The circuit court, therefore, erred in dismissing the present case for a violation of the defendant's right to a speedy trial.

## CONCLUSION

For the foregoing reasons, we reverse the order of the circuit court dismissing the criminal complaint and dismissing the sexually dangerous persons proceeding, and we remand this cause for further proceedings.

Reversed; cause remanded.

CHAPMAN and SPOMER, JJ., concur.

NO. 5-07-0161

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS,) | Appeal from the |
| ) | Circuit Court of |
| Plaintiff-Appellant, ) | Pulaski County. |
| ) | |
| v. ) | No. 06-CF-39 |
| ) | |
| CHAD SPURLOCK, ) | Honorable |
| ) | William J. Thurston, |
| Defendant-Appellee. ) | Judge, presiding. |

**Opinion Filed**:     February 26, 2009

**Justices**:     Honorable Bruce D. Stewart, J.

Honorable Melissa A. Chapman, J., and
Honorable Stephen L. Spomer, J.,
Concur

**Attorneys**
**for**
**Appellant**

Lisa Madigan, Attorney General of Illinois, Gary Feinerman, Solicitor General, Michael M. Glick, Leah C. Myers, Assistant Attorney General, 100 W. Randolph Street, 12th Floor, Chicago, IL 60601

**Attorneys**
**for**
**Appellee**

Daniel M. Kirwan, Deputy Defender, John H. Gleason, Assistant Defender, Office of the State Appellate Defender, Fifth Judicial District, 117 North Tenth Street, Suite #300, Mt. Vernon, IL 62864; Brad T. Sherrill, 500 South Main Street, Anna, IL 62906