_______________________________No. 3–09–0418

Filed June 21, 2010

# IN THE APPELLATE COURT OF ILLINOIS

## THIRD DISTRICT

### A.D., 2010

| | | |
|---|---|---|
| THE PEOPLE ex rel. THE DEPARTMENT ) | Appeal from the Circuit Court | |
| OF CORRECTIONS, | ) | of the 12th Judicial Circuit, |
| | ) | Will County, Illinois |
| Plaintiff-Appellant and | ) | |
| Cross-Appellee, | ) | |
| | ) | No.  05-L-206 |
| v. | ) | |
| | ) | |
| KENSLEY HAWKINS (No. A80195), | ) | |
| | ) | Honorable |
| Defendant-Appellee and | ) | Barbara Petrungaro, |
| Cross-Appellant. | ) | Judge, Presiding. |

JUSTICE CARTER delivered the opinion of the court:

Plaintiff, the Illinois Department of Corrections (the Department), brought suit against defendant, inmate Kensley Hawkins, to recover approximately $456,000 in costs incurred during Hawkins's incarceration.  While the suit was pending, the trial court granted the Department's motion to attach Hawkins's bank account, which had been funded entirely from money that Hawkins had earned working in the Department's employment programs.  Pursuant to statute, an offset had already been taken out of that money by the Department before it had been paid out to Hawkins.  Acting upon cross-motions for summary judgment, the trial court, in an order entered upon reconsideration, granted a monetary judgment in favor of the Department and against Hawkins for approximately $455,000 but vacated the prior attachment order and precluded the Department from attaching Hawkins's bank account.  Both sides appeal.  The Department appeals, arguing that the trial court

erred in vacating the prior attachment order and in precluding the Department from attaching Hawkins's bank account. Hawkins cross-appeals, arguing that the trial court erred in entering a monetary judgment against him. We reverse the trial court's ruling as to the Department's appeal and affirm the trial court's ruling as to Hawkins's cross-appeal.

FACTS

In March of 2005, the Department brought the instant action, pursuant to section 3-7-6 of the Unified Code of Corrections (the Code) (730 ILCS 5/3-7-6 (West 2008)) to recover approximately $456,000 in costs incurred during Hawkins's incarceration. Hawkins asserted as an affirmative defense that his obligation to contribute towards his incarceration expenses was fully satisfied, when, pursuant to section 3-12-5 of the Code (730 ILCS 5/3-12-5 (West 2008)), the Department offset 3% of his earnings from the correctional employment programs.

In June of 2006, the Department filed a pretrial motion, pursuant to section 4-101(11) of the Code of Civil Procedure (735 ILCS 5/4-101(11) (West 2008)), to attach Hawkins's bank account at the Lincoln Savings Bank. The account had approximately $11,000 in it, which had been accumulated from Hawkins's earnings as an inmate in the Department's employment programs. As noted above, an offset had been taken out of the earnings, pursuant to section 3-12-5 of the Code, before the earnings were paid out to Hawkins. In August of 2006, the trial court granted the Department's motion and issued an order of attachment of the funds, except for $4,000 that the trial court held was exempt from attachment pursuant to the personal property exemption statute (735 ILCS 5/12-1001 (West 2008)).

In March of 2008, both sides filed motions for summary judgment as to the Department's underlying complaint for reimbursement. The pleadings and other documents presented in the

2

summary judgment proceedings established that: (1) Hawkins was an inmate in the Department of Corrections at Stateville Correctional Center (Stateville) in Joliet, Illinois, and had been incarcerated at that location for several years; (2) the cost of Hawkins's care, custody, and treatment at Stateville from July 1, 1983, to March 17, 2005, was approximately $456,000; (3) during his incarceration, Hawkins worked in the correctional employment programs and was paid for his services; (4) pursuant to section 3-12-5 of the Code, an offset of 3%, or approximately $751, was taken out of Hawkins's earnings before they were paid out to him; and (5) Hawkins deposited a portion of his remaining correctional earnings, approximately $11,000, into his bank account at the State Bank of Lincoln.

In February of 2009, after the issue had been fully briefed and taken under advisement, the trial court issued its initial ruling in this case on the motions for summary judgment. The trial court granted summary judgment for Hawkins and denied summary judgment for the Department. In its written order, the trial court noted that sections 3-12-5 and 3-7-6 of the Code were in conflict. The trial court found that section 3-12-5 controlled, as the more specific statute on the issue, and that it precluded the Department from attaching Hawkins's bank account in an action under section 3-7-6.

The Department filed a motion to reconsider. The trial court took the motion under advisement. In April of 2009, the trial court issued a revised order. In the revised order, the trial court granted partial summary judgment for the Department and entered a monetary judgment for approximately $455,000 in favor of the Department and against Hawkins. However, also in the revised order, the trial court essentially granted partial summary judgment in favor of Hawkins and maintained its previous ruling that the Department was precluded from collecting money from Hawkins's bank account to satisfy the judgment. The trial court vacated its August 2006 order,

3

which had allowed the attachment of Hawkins's bank account. That portion of the trial court's revised order was later stayed, on motion of the Department, pending an appeal. The Department's appeal and Hawkins's cross-appeal followed.

ANALYSIS

On appeal, the Department argues that the trial court erred in granting partial summary judgment in favor of Hawkins and in precluding the Department from attaching Hawkins's bank account. Specifically, the Department asserts first that sections 3-12-5 and 3-7-6 of the Code are not in conflict or ambiguous and that their plain language, when read as a whole, allows the Department to take an initial offset out of Hawkins's earnings and to later attach Hawkins's bank account. Second, and in the alternative, the Department asserts that if the two statutes are conflicting or ambiguous, section 3-7-6 controls as the more specific statute pertaining to the attachment of an inmate's assets to satisfy the cost of incarceration and that the legislative history and purpose of the statutes supports a reading that would allow the Department to attach Hawkins's bank account under the facts of the instant case. The Department asks this court, therefore, to reverse that portion of the trial court's revised order which precluded the Department from attaching Hawkins's bank account and which vacated the previous order of attachment.

As to the Department's appeal, Hawkins argues that the trial court properly found that the Department was precluded from attaching Hawkins's bank account. Specifically, Hawkins asserts that the two statutes are conflicting, that section 3-12-5 of the Code controls as the more specific statute, and that the Department's taking of a 3% offset out of his earnings, pursuant to section 3-12-5, satisfied his statutory obligation to contribute to the costs of his incarceration and precluded the Department from later seeking to attach his bank account, which was comprised entirely of his

4

remaining prison earnings (after the offset had been taken). Hawkins maintains that to adopt the Department's interpretation of the statutes would be to undermine the legislative purpose for creating the prison employment system–to provide an inmate with a means in which to reimburse the state in part for the cost of his incarceration, to promote habits of work and responsibility, and to allow an inmate to save some money for when he is released back into the community. See 730 ILCS 5/3-12-1 (West 2008).

The purpose of summary judgment is not to try a question of fact, but to determine if one exists. Adams v. Northern Illinois Gas Co., 211 Ill. 2d 32, 42-43, 809 N.E.2d 1248, 1256 (2004). Summary judgment should be granted only where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2008); Adams, 211 Ill. 2d at 43, 809 N.E.2d at 1256. A trial court's grant of summary judgment is subject to de novo review on appeal. Adams, 211 Ill. 2d at 43, 809 N.E.2d at 1256. The construction of a statute is an appropriate matter for summary judgment and is also subject to a de novo standard of review on appeal. See Village of Chatham v. County of Sangamon, 216 Ill. 2d 402, 433, 837 N.E.2d 29, 47-48 (2005).

In support of its argument on appeal, the Department first asserts that section 3-12-5 and section 3-7-6 of the Code are not conflicting or ambiguous and that the plain language of the two statutes, read as a whole, reflects the legislature's intent to establish two complimentary methods of obtaining reimbursement from inmates for the costs of incarceration, the first of which allows the Department to directly offset a portion of the inmate's wages, pursuant to section 3-12-5 of the Code, without any additional legal proceedings; and the second of which allows the Department, through

the Attorney General, to bring a formal civil action, pursuant to section 3-7-6 of the Code, to seek recovery of the costs of incarceration from a broadly defined list of assets belonging to the inmate.

The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature. Town & Country Utilities, Inc. v. Illinois Pollution Control Board, 225 Ill. 2d 103, 117, 866 N.E.2d 227, 235 (2007). The most reliable indicator of that intent is the language of the statute itself. Town & Country Utilities, Inc., 225 Ill. 2d at 117, 866 N.E.2d at 235. If the statutory language is clear and unambiguous, it must be applied as written, without resorting to further aids of statutory construction. Town & Country Utilities, Inc., 225 Ill. 2d at 117, 866 N.E.2d at 235. A court may not depart from the plain language of the statute and read into it exceptions, limitations, or conditions that are not consistent with the express legislative intent. Town & Country Utilities, Inc., 225 Ill. 2d at 117, 866 N.E.2d at 235.

The two statutes in question in the present case are section 3-12-5 and section 3-7-6 of the Code. Section 3-12-5 provides, in pertinent part, as follows:

"§ 3-12-5. Compensation. Persons performing a work assignment under subsection (a) of Section 3-12-2 may receive wages under rules and regulations of the Department. In determining rates of compensation, the Department shall consider the effort, skill and economic value of the work performed. Compensation may be given to persons who participate in other programs of the Department. Of the compensation earned pursuant to this Section, a portion, as determined by the Department, shall be used to offset the cost of the committed person's incarceration. *** All other wages shall be

6

deposited in the individual's account under rules and regulations of the Department. The Department shall notify the Attorney General of any compensation applied towards a satisfaction, in whole or in part, of the person's incarceration costs." 730 ILCS 5/3-12-5 (West 2008).

Section 3-7-6 of the Code, on the other hand, provides, in pertinent part, as follows:

"(a) Responsibility of committed persons. For the purposes of this Section, 'committed persons' mean those persons who through judicial determination have been placed in the custody of the Department on the basis of a conviction as an adult. Committed persons shall be responsible to reimburse the Department for the expenses incurred by their incarceration at a rate to be determined by the Department in accordance with this Section.

* * *

(d) Authority. The Director, or the Director's designee, may, when he or she knows or reasonably believes that a committed person, or the estate of that person, has assets which may be used to satisfy all or part of a judgment rendered under this Act *** provide for the forwarding to the Attorney General of a report on the committed person and that report shall contain a completed form under subsection (a-5) together with all other information available concerning the assets of the committed person and an estimate of the total expenses for that committed person, and authorize the Attorney

7

General to institute proceedings to require the persons, or the estates of the persons, to reimburse the Department for the expenses incurred by their incarceration. The Attorney General, upon authorization of the Director, or the Director's designee, shall institute actions on behalf of the Department and pursue claims on the Department's behalf in probate and bankruptcy proceedings, to recover from committed persons the expenses incurred by their confinement." 730 ILCS 5/3-7-6(a), (d) (West 2008).

"Assets" are defined in section 3-7-6(e)(3) as follows:

"The assets of a committed person, for the purposes of this Section, shall include any property, tangible or intangible, real or personal, belonging to or due to a committed or formerly committed person including income or payments to the person from social security, worker's compensation, veteran's compensation, pension benefits, or from any other source whatsoever and any and all assets and property of whatever character held in the name of the person, held for the benefit of the person, or payable or otherwise deliverable to the person. Any trust, or portion of a trust, of which a convicted person is a beneficiary, shall be construed as an asset of the person, to the extent that benefits thereunder are required to be paid to the person, or shall in fact be paid to the person. At the time of a legal proceeding by the Attorney General under this Section, if it appears

8

that the committed person has any assets which ought to be subjected

to the claim of the Department under this Section, the court may issue

an order requiring any person, corporation, or other legal entity

possessed or having custody of those assets to appropriate any of the

assets or a portion thereof toward reimbursing the Department as

provided for under this Section. No provision of this Section shall be

construed in violation of any State or federal limitation on the

collection of money judgments." 730 ILCS 5/3-7-6(e)(3) (West

2008).

Having reviewed the two statutes in question, we cannot agree with the position taken by the trial court. Neither of the two statutes is ambiguous. Nor are the two statutes, when read together, contradictory. Contrary to the trial court's ruling, section 3-12-5 of the Code places no limitation upon the Department from later filing a civil suit, pursuant to section 3-7-6, to attach a bank account, such as the one in the present case, that has been funded by prison earnings remaining after a section 3-12-5 offset has been taken. Moreover, as a matter of statutory construction, we cannot read such a limitation or exception into either of the two statutes. See Town & Country Utilities, Inc., 225 Ill. 2d at 117, 866 N.E.2d at 235 (where the plain language of the statute is clear and unambiguous, a court cannot read exceptions or conditions into the statute that the legislature did not express). It is clear from the broad definition of assets contained in section 3-7-6(e)(3) that a civil action pursuant to section 3-7-6 of the Code may be brought to attach income from any source whatsoever. 730 ILCS 5/3-7-6(e)(3) (West 2008). Thus, we conclude that the trial court erred in finding that the Department was precluded from attaching Hawkins's bank account and in vacating the prior

attachment order. We, therefore, reverse that portion of the trial court's revised order.

Having found the Department's first assertion to be dispositive of this issue, we need not address the Department's alternative assertion. In reaching the above conclusion, we note that the rules of statutory construction cited by Hawkins do not apply in a situation, such as the one in the present case, where the statutes in question are found not to be in conflict. See People ex rel. Director of Corrections v. Booth, 215 Ill. 2d 416, 424, 830 N.E.2d 569, 573 (2005). We also note that although the parties spend a great deal of time discussing the legislative history behind the two statutes, that history, an extrinsic aid to interpretation of the statutes, is only considered if the statutes are found to be ambiguous, a finding which we have not made here. See Town & Country Utilities, Inc., 225 Ill. 2d at 117, 866 N.E.2d at 235 (if the statutory language is clear and unambiguous, it must applied as written, without resorting to further aids of statutory construction).

We now turn to the merits of Hawkins's cross-appeal. On cross-appeal, Hawkins argues that the trial court erred in granting partial summary judgment in the Department's favor and in entering a monetary judgment of approximately $455,000 in favor of the Department and against Hawkins. Hawkins's argument on cross-appeal is premised on the assertion that any further action by the Department under section 3-7-6 of the Code is precluded by the fact that the Department already took an offset from his wages under section 3-12-5 of the Code. As we have rejected that argument as noted above, we must rule against Hawkins on his cross-appeal. Although Hawkins argues in the alternative that the Department's civil suit is barred because the Department initially failed to follow the proper procedure and failed to notify the Attorney General of the amount it had offset from Hawkins's wages, Hawkins cites no law to support his position in that regard, and indeed, we have found none. Thus, we conclude that the trial court properly entered a monetary judgment for

10

approximately $455,000 against Hawkins and in favor of the Department. We, therefore, affirm that portion of the trial court's revised order.

For the foregoing reasons, as to the Department's appeal, we reverse the trial court's ruling, which vacated its previous attachment order and precluded the Department from attaching defendant's bank account. As to Hawkins's cross-appeal, we affirm the trial court's ruling entering a monetary judgment in favor of the Department and against Hawkins for approximately $455,000.

Reversed in part and affirmed in part.

SCHMIDT, J. concurring.

JUSTICE LYTTON, dissenting:

I dissent from the majority's decision in this case. I would find that the Department had no authority to attach Hawkins's prison employment earnings as reimbursement pursuant to section 3-7-6 of the Code. I would also find that the Department could not obtain a judgment against Hawkins pursuant to section 3-7-6.

I

The majority holds that sections 3-7-6 and 3-12-5 of the Code can be read harmoniously to allow the Department to attach any and all income that a prisoner earns as an employee of the correctional industries program. I disagree. Section 3-12-5 states in pertinent part:

"Persons performing a work assignment [for the correctional industries program] may receive wages under rules and regulations of the Department. *** Of the compensation earned pursuant to this Section, a portion, as determined by the Department, shall be used to offset the cost of the committed person's incarceration. *** All other wages shall be deposited in the individual's account ***." 730 ILCS

11

5/3-12-5 (West 2008).

According to the Department's rules and regulations, "Committed persons shall be compensated for the duties performed in accordance with the pay plan established for the [correctional industries] program." 20 Ill. Adm. Code §117.40(d), adopted at 23 Ill. Reg. 13597, 13601, eff. November 1, 1999. The portion of a prisoner's compensation used to offset the costs of his incarceration is 3% to 5%, as determined by the Director. 20 Ill. Adm. Code §117.30(f), adopted at 23 Ill. Reg. 13601, eff. November 1, 1999.

The plain and unambiguous language of section 3-12-5 of the Code and the regulations promulgated thereunder require the Department to provide compensation to prisoners who work. Additionally, section 3-12-5 and its accompanying rules and regulations expressly limit the amount the Department can obtain to "offset the cost of the committed person's incarceration" to 3% to 5% of the prisoner's wages. Thus, allowing the Department to utilize section 3-7-6 of the Code to attach more than 3% to 5% of a prisoner's wages as reimbursement "for expenses incurred by their incarceration" violates section 3-12-5 and the regulations promulgated thereunder.

This conclusion is supported by the legislative history of section 3-12-5 of the Code. The majority contends that it is inappropriate to examine the legislative history of section 3-12-5. I disagree. The principal objective of statutory construction is

12

to determine and give effect to the legislature's intent. <u>People v. Spurlock</u>, 388 Ill. App. 3d 365, 370, 903 N.E.2d 874, 880 (2009). In addition to the statutory language, courts may consider the purpose behind the law and the evils sought to be remedied. <u>Spurlock</u>, 388 Ill. App. 3d at 371, 903 N.E.2d at 880. Thus, it is proper to examine the legislative history of section 3-12-5 to determine its purpose and objectives.

The sponsor of the bill that amended section 3-12-5 of the Code to include the offset provision explained that the bill's purpose was to teach incarcerated persons "a skill and a new work ethic" and to allow them to "save[] some money to come back into the community." 86th Ill. Gen Assem., Senate Proceedings, May 25, 1989, at 429 (statement of Senator Collins). Representative Tom Homer expressed his support for the bill, explaining:

> "I think it combines a lot of good concepts that our
> constituents are for. It allows the inmates to be
> productive. It teaches them a trade. At the same time,
> it helps reduce the cost of incarcerating inmates which
> has risen to alarming amounts and allows the Department
> of Corrections to recoup part of the costs of keeping
> inmates in the prison system." 86th Gen. Assem., House
> Proceedings, June 15, 1989, at 168 (statement of
> Representative Homer).

The statements above reflect that the legislature intended for

13

prisoners to pay a portion (3% to 5%) of the compensation that they earn to the Department as reimbursement for costs of incarceration and be allowed to save the rest of the money they earn.

The majority's interpretation of 3-7-6 to allow attachment of any and all of a prisoner's wages directly conflicts with section 3-12-5, which specifically limits the amount the Department can recover from a prisoner's wages. When two statutes cannot be read harmoniously, the more specific one applies over the more general. Board of Education of Indian Prairie Community Unit School District No. 204 v. Regional Board of School Trustees of Will County, Illinois, 393 Ill. App. 3d 561, 564, 913 N.E.2d 630, 634 (2009). Section 3-7-6 generally addresses the responsibility of committed persons "to reimburse the Department for expenses incurred by their incarceration." 730 ILCS 5/3-7-6(a) (West 2008). Nowhere does section 3-7-6 mention prisoners' employment compensation. Section 3-12-5, on the other hand, directly deals with compensation of persons performing work in the Department's employment program. See 730 ILCS 3-12-5 (West 2008). It also specifically addresses the amount the Department may recover to "offset the cost of the committed person's incarceration." 730 ILCS 3-12-5 (West 2008). Section 3-12-5 is the more specific statute and must be applied to prohibit the Department from attaching all of Hawkins's employment earnings pursuant to section 3-7-6.

For these reasons, I would affirm the trial court's decision

14

denying attachment of Hawkins's bank account.

## II

With respect to Hawkins's cross-appeal, I would find that the Department was not allowed, under section 3-7-6, to authorize the Attorney General to obtain a monetary judgment against Hawkins.

Section 3-7-6(d) of the Code provides that whenever the Department's Director or his designee "knows or reasonably believes that a committed person, or the estate of that person, has assets which may be used to satisfy all or part of a judgment rendered under this Act," he may "authorize the Attorney General to institute proceedings to require the persons, or the estates of the persons, to reimburse the Department for expenses incurred by their incarceration." 730 ILCS 5/3-7-6(d) (West 2008). Based on the plain language above, a reimbursement action may only be initiated against a committed person when the Department "knows or reasonably believes" that he "has assets which may be used to satisfy all or part of a judgment." (Emphasis added.) 730 ILCS 5/3-7-6(d) (West 2008).

Here, Hawkins's only asset was the approximately $11,000 in his bank account that he earned as wages while working in prison. Since the Department may not recover more than the statutorily authorized deductions, Hawkins had no assets that could be attached under section 3-7-6. The Department could not "reasonably believe[]" that Hawkins had "assets which may be used to satisfy

15

all or part of a judgment rendered under [the Code]." 730 ILCS 5/3-7-6(d) (West 2008). The action filed against Hawkins was not authorized under section 3-7-6(d) and should have been dismissed.

For these reasons, I would reverse the trial court's order entering a monetary judgment of approximately $455,000 in favor of the Department and against Hawkins.