THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HARLEY H. HATCHER, Defendant-Appellant.

Fifth District    No. 5—08—0060

Opinion filed June 23, 2009.—Rehearing denied July 10, 2009.

Michael J. Pelletier, E. Joyce Randolph, and Rita K. Peterson, all of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Stephen G. Friedel, State's Attorney, of Vandalia (Patrick Delfino, Stephen E. Norris, and Patrick D. Daly, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE CHAPMAN delivered the opinion of the court:

The defendant, Harley H. Hatcher, appeals his conviction for indecent solicitation of a minor with intent to commit aggravated criminal sexual abuse (720 ILCS 5/11—6(a) (West 2006)). He argues

that there was no evidence that he commanded, authorized, urged, incited, requested, or advised the 16-year-old complainant to engage in any particular sexual act. See 720 ILCS 5/11—6(b) (West 2006). There is no dispute that the defendant did not explicitly ask the teenager to perform any sexual act. At issue is whether the defendant's conversation with the complaining witness—during which he discussed the benefits of oral sex—could support an inference that he intended to influence the teenager to engage in sexual activity with him beyond a reasonable doubt. We affirm.

The defendant was found guilty after a bench trial on September 26, 2007. Only three witnesses testified—the defendant, the complaining witness, and Officer Darrell Glore, the police officer who investigated the charge. The incident giving rise to the charge at issue occurred 3 1/2 months earlier, on the afternoon of June 1, 2007, on a public street near downtown Vandalia, Illinois. The 16-year-old complainant, Andrew, was walking from a friend's house to a store to purchase a soda. According to Andrew's testimony, the defendant honked his horn at him. Andrew turned to see who was honking at him. Because he did not recognize the defendant, he turned around and continued walking.

When Andrew was walking back from the store after buying his soda, he saw the defendant's car again. The defendant approached Andrew in his vehicle and offered him a ride home, which Andrew declined. Then, according to Andrew, the defendant "just started talking" and then asked Andrew how old he was. When Andrew told the defendant he was 16, the defendant said that he "just wondered" whether Andrew was 18. Then the defendant "just said something else" and then told Andrew that he was gay. Andrew told him, "Alright, dude, that's cool, whatever." On direct examination, Andrew stated that the defendant next told him that he wanted to perform oral sex on Andrew. On cross-examination, however, Andrew refreshed his memory by reading his statement to the investigating officer. He testified that the defendant next asked him whether any man had ever performed oral sex on him. After that, Andrew stated, the defendant told him that the best thing about men performing oral sex was that they would swallow "the whole thing if it was long enough." Andrew informed the defendant that he preferred girls, to which the defendant replied, "Guys are better." At this point, Andrew told the defendant he needed to leave, and he walked away. The defendant did not try to pursue him. Andrew acknowledged that the defendant did not specifically ask him to perform any type of sexual act.

Officer Glore testified that, after Andrew reported the incident, he and another officer went to the defendant's apartment. Although

Andrew did not know who the defendant was, the officers knew who he was based on the descriptions Andrew gave of the defendant and his vehicle. Glore first asked the defendant if he had been in the vicinity of the old capitol building, the area where the incident occurred. The defendant stated that he had. Glore then asked if the defendant had stopped to talk to anyone while he was in that area. The defendant initially said no, but when Officer Glore informed him that someone had made a complaint and given a description that matched the defendant and his vehicle, the defendant then stated that he would tell the officers the truth.

Officer Glore testified that the defendant told him that he had stopped to ask someone if he needed a ride. After looking at the report he made of the incident to refresh his memory, Officer Glore stated that the defendant told him that he had asked the young man if he knew anyone who wanted oral sex. When Officer Glore asked the defendant why he would approach a stranger to ask this, the defendant told him that it was because he was "horny." The defendant told Glore that he asked Andrew his age after asking if he knew anyone who wanted oral sex. When Andrew told him he was 16, the defendant drove away.

The defendant testified only briefly. He admitted to having a conversation with Andrew but denied asking Andrew to perform any sexual act. Defense counsel asked the defendant at what point during the conversation he found out Andrew's age, to which the defendant replied, "About the middle."

After closing arguments, the court explained its rationale for finding the defendant guilty. The court first noted that, even though the trier of fact was a judge rather than a jury, the judge was allowed to consider the evidence in light of his observations and experiences just as jurors would be instructed to do in a jury trial. See Illinois Pattern Jury Instructions, Criminal, No. 1.01 (4th ed. 2000). The court then discussed the statutory definition of "solicit" as well as the dictionary definitions of some of the components of that statutory definition. The court stated as follows:

> "It means to [']command, authorize, urge, or incite another to perform an act.['] [See 720 ILCS 5/11—6(b) (West 2006) (defining the term 'solicit' as 'to command, authorize, urge, incite, request, or advise another to perform an act by any means').] Webster's New Century Dictionary defines [']incite['] to mean [']to urge to action, to rouse.['] The same dictionary defines [']urge['] as [']to drive forward, to press, plead with.['] *** The same dictionary defines [']authorize['] as [']to give authority to, to empower, to give official approval to, or to sanction.['] "

The court expressly found Andrew's testimony to be credible and noted that the defendant "never refuted telling the police, quote, I was horny, end quote." The court then found as follows:

"Obviously, what the defendant was doing was he was trolling for teenagers to see if he could obtain oral sex. There's no question about it. You don't just sit in the middle of a town and start talking to young children about the benefits and joys of oral sex for no reason."

On January 28, 2008, two days before the sentencing hearing was scheduled, the defendant filed a motion to reconsider the verdict. He argued that (1) the State failed to prove an essential element of the crime because the complainant admitted that the defendant never explicitly asked him to perform any sexual acts and (2) the court's statement that "[o]bviously, what the defendant was doing was he was trolling for teenagers to see if he could obtain oral sex" demonstrated that the court was "moved by passion or prejudice."

At the January 30 sentencing hearing, the court ruled on the motion to reconsider despite its untimely filing. See 725 ILCS 5/116—1(b) (West 2006) (providing that a posttrial motion must be filed within 30 days of a finding of guilt). The court denied the motion, explaining that it expressly found Andrew's testimony to be more credible than that of the defendant. (We note that the only discrepancy in the testimony of the three witnesses was the point at which the defendant learned that Andrew was under 18. The defendant did not challenge the court's determination that Andrew's testimony on that issue was more credible. It is not clear why the court treated the defendant's motion to reconsider as one raising issues of witness credibility. This does not change our conclusion that the court reached the correct result, however.) The court sentenced the defendant to 30 months of probation. This appeal followed on January 31, 2008.

On appeal, the defendant argues that he was not proven guilty of solicitation beyond a reasonable doubt. As previously discussed, there was no evidence that the defendant directly requested Andrew to perform any specific sexual act, nor was there any evidence that the defendant directly requested permission to perform any specific act on Andrew. The question is whether the words the defendant did use fell within the statutory definition of "solicit." In light of the breadth of the statute, we conclude that there was sufficient evidence to support the trial court's finding that the defendant urged and attempted to incite Andrew to engage in sexual activity with him.

There are two components to the issue before us. First, we must consider how direct the words used by a defendant must be in order to fit within the statutory definition of "solicit." Second, we must

consider whether the court could properly conclude that the defendant here intended to entice the 16-year-old boy into sexual activity. Although the parties do not frame the issue as one of intent, both address the court's findings related to the defendant's intent. Moreover, we believe the defendant's intent is relevant to our consideration of the statutory meaning of "solicit" because it would make little sense to interpret the statute in such a way that it excludes from its scope conduct or words that are intended to entice minors into engaging in sexual activity with adults. See *People v. Spurlock*, 388 Ill. App. 3d 365, 371, 903 N.E.2d 874, 880 (2009) (explaining that, in construing statutes, courts must presume that the legislature did not intend a result that is absurd, unjust, or inconvenient).

In addressing the first component of the issue, we are guided by principles of statutory interpretation. Our goal is to ascertain and effectuate the intent of the legislature in enacting the statute. The best evidence of legislative intent is the statutory language, and we should give the words in a statute their plain, ordinary, and commonly understood meaning. *Spurlock*, 388 Ill. App. 3d at 371, 903 N.E.2d at 880.

As previously noted, the statute at issue defines "solicit" as any effort "to command, authorize, urge, incite, request, or advise" a minor to engage in sexual acts. 720 ILCS 5/11—6(b) (West 2006). Here, the defendant did not command, request, or authorize Andrew to do anything. At issue is whether he urged, incited, or advised Andrew within the meaning of the statute. Webster's Ninth New Collegiate Dictionary provides multiple definitions for each of these words. In relevant part, it defines "advise" as "recommend" (Webster's Ninth New Collegiate Dictionary 59 (1988)) and "incite" as "to move to action: stir up: spur on: [or] urge on" (Webster's Ninth New Collegiate Dictionary 609 (1988)). The same dictionary defines the word "urge" to mean "to present, advocate, or demand earnestly"; "[to] solicit, entreat"; "to serve as a motive or reason for"; "[to] stimulate, provoke"; or "to declare, advance, or press earnestly a statement, argument, charge, or claim." Webster's Ninth New Collegiate Dictionary 1298 (1988).

We believe that the defendant's words to Andrew fall within these rather broad definitions, particularly when the entire conversation is considered. The defendant's comments about why he believed oral sex with men was preferable to oral sex with women could certainly be seen as an attempt to recommend the activity to Andrew and to move or spur him to act on the recommendation. The defendant also asked Andrew if he knew anyone who wanted oral sex, thereby letting him know that he was willing and available to perform the act. Thus, the

conversation as a whole can be construed as an effort to encourage Andrew to engage in oral sex with the defendant.

The defendant also argues that the court's conclusion that he intended to entice Andrew into engaging in oral sex with him was flawed. We disagree. When a defendant challenges the sufficiency of the evidence to support his conviction, we view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could conclude that all of the essential elements of the offense have been proven. *People v. Leonard*, 377 Ill. App. 3d 399, 403, 879 N.E.2d 414, 417 (2007), citing *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277 (1985). The defendant correctly points out that this burden cannot be met by speculation or conjecture. See *People v. Games*, 94 Ill. App. 3d 130, 131, 418 N.E.2d 520, 521 (1981) (reversing a defendant's conviction on drug charges where the State tested only one of two bags of a similar substance found in his possession). However, the trial judge in a bench trial is entitled to draw reasonable inferences from the totality of the evidence presented. *Leonard*, 377 Ill. App. 3d at 403, 879 N.E.2d at 418, citing *People v. Slim*, 127 Ill. 2d 302, 307, 537 N.E.2d 317, 319 (1989). This includes drawing reasonable inferences regarding a defendant's intent from the surrounding circumstances. *Leonard*, 377 Ill. App. 3d at 404, 879 N.E.2d at 418.

The defendant argues that there was insufficient evidence to conclude that he intended to solicit sexual activity because the exchange could just as easily be seen as an attempt to "provoke a reaction, but not [an] interaction." He emphasizes that the encounter took place on a public street in broad daylight, and he contends that an attempt to entice a minor to engage in oral sex would more likely take place in a more private setting. The State, for its part, argues that it was reasonable for the court to infer from the evidence "that the defendant was glamorizing the act of oral sex so as to pique the minor's curiosity, or at least explore the minor's willingness to engage in the act." We agree with the State.

The question is not whether any innocent explanation for the defendant's behavior is possible; the question is whether any reasonable trier of fact could conclude that he intended to entice Andrew into a sexual encounter. The evidence before the court included testimony that the defendant did more than merely extol the virtues of oral sex with men. There was also evidence that the defendant offered Andrew a ride in his car, asked the boy if he knew anyone who wanted oral sex, and admitted to the investigating officer that he asked this question because he was "horny." The offer of a ride, if accepted, could have provided a more private setting in which to act on

the defendant's suggestion of oral sex even though the suggestion itself occurred on a public street. Moreover, in the face of the defendant's admission that he was motivated by feeling "horny," it is hard to see how the court's conclusion that he intended to engage in oral sex with Andrew was not supported by sufficient evidence.

We conclude that the record contains sufficient evidence from which the court could find that the defendant intended to entice Andrew to engage in sexual activity with him. We also conclude that the statutory definition of "solicit" is broad enough to encompass the defendant's actions in this case. For the foregoing reasons, we affirm the defendant's conviction.

Affirmed.

WEXSTTEN, P.J., and GOLDENHERSH, J., concur.