STATE OF NORTH CAROLINA v. CHARLES DANIEL FRALEY

No. COA09-785

(Filed 16 February 2010)

**1. Sexual Offenses— solicitation of child by means of computer for purpose of committing unlawful sex act—motion to dismiss—sufficiency of evidence**

A *de novo* review revealed the trial court did not err by denying defendant's motion to dismiss the charge of solicitation of a person believed to be a child by means of a computer for the purpose of committing an unlawful sex act under N.C.G.S. § 14-202.3(a) based on alleged insufficient evidence that defendant "enticed or advised" the undercover detective to meet with him. Defendant's words, including his entire online and telephone conversations, fell within these definitions and accurately described his course of conduct.

**2. Evidence— cross-examination—opinion testimony—invited error**

The trial court did not commit plain error in a case involving the solicitation of a person believed to be a child by means of a computer for the purpose of committing an unlawful sex act by allowing a detective to give opinion testimony that defendant was going to have sex with a fourteen-year-old. Even assuming the elicited statements were error, defendant cannot be prejudiced by them as a matter of law when he invited them during cross-examination.

**3. Constitutional Law— effective assistance of counsel—failing to renew motion to dismiss—eliciting and failing to move to strike testimony**

Defendant did not receive ineffective assistance of counsel based on his trial counsel's failing to renew his motion to dismiss at the close of all evidence and by eliciting and failing to move to strike a detective's lay opinion testimony. There was no reasonable probability that a different outcome would have resulted absent the alleged errors.

**4. Appeal and Error— preservation of issues—failure to argue**

Assignments of error defendant failed to argue in his brief were deemed abandoned under N.C. R. App. P. 28(b)(6).

**STATE v. FRALEY**

[202 N.C. App. 457 (2010)]

Appeal by defendant from judgment entered 17 February 2009 by Judge W. Osmond Smith in Wake County Superior Court. Heard in the Court of Appeals 8 December 2009.

*Attorney General Roy Cooper, by Assistant Attorney General Chris Z. Sinha, for the State.*

*Mark Montgomery, for defendant-appellant.*

CALABRIA, Judge.

Charles Daniel Fraley ("defendant") appeals a judgment entered upon a jury verdict finding him guilty of soliciting a person the defendant believed to be a child by means of a computer for the purpose of committing an unlawful sex act. We find no error.

## I.  BACKGROUND

On 7 December 2007, defendant, a married father of a nine-year-old daughter, logged on to the Yahoo Internet chat room titled NC Romance ("NC Romance").[1] Defendant did not log on using his real name, but instead used the pseudonym "moonraker1rain." Detective Kelly Marshburn ("Detective Marshburn"), a cyber crimes detective with the Raleigh Police Department ("RPD"), also logged on to NC Romance that day. As part of her duties with the RPD, Detective Marshburn signed on to NC Romance as "cassia dutra" ("Cassia"). Detective Marshburn adopted the persona of Cassia, a 14 year-old-girl who lived with her mother in Raleigh near Crabtree Valley Mall ("the mall"), in order to see if someone would solicit a child for sex using a computer.

At 2:50 p.m. on 7 December 2007, defendant made his initial contact with Cassia in the NC Romance chat room. By 3:00 p.m., defendant asked Cassia if she was "looking for a hook up." At 3:08 p.m., defendant asked Cassia if she would "like [to] meet and have good sex," and then asked Cassia to send him a picture of herself over the Internet. Cassia sent defendant three pictures. The pictures were actually photographs of a female coworker at the RPD taken when the coworker was 14 years old. The coworker had given Detective Marshburn permission to use the photos. When defendant received

---

1. "Chat rooms" and "instant messenger" are types of Internet services that allow users to engage in real time dialogue "by typing messages to one another that appear almost immediately on the others' computer screens." *Reno v. American Civil Liberties Union,* 521 U.S. 844, 851-52, 117 S. Ct. 2329, 2335, 138 L. Ed. 2d 874, 885 (1997).

STATE v. FRALEY

[202 N.C. App. 457 (2010)]

the pictures, he replied to Cassia, "you look pretty." Defendant then sent two pictures of himself to Cassia. In one photo, defendant was pictured wearing only a small bathing suit and sunglasses, and in the other, defendant was wearing military fatigues. Defendant then told Cassia, "you look hot to [sic] . . . do you want to get together?" When Cassia asked how old he was, he replied that he was 32 and asked how old Cassia was. When she answered that she was 14, defendant stated that he thought she was older. However, defendant continued to chat with Cassia online for nearly 30 minutes. During this time, defendant asked Cassia where she lived, joked that he could "hook up" with her and her mother, and suggested meeting Cassia in person so they could "go somewhere and park."

On 12 December 2007, defendant logged on to NC Romance under the pseudonym "dan claussen." Defendant chatted with Cassia for nearly 50 minutes. During the chat, Cassia again identified herself as being 14 years old. Defendant expressed interest in meeting Cassia and asked her, "what do you want to do when we meet?" When Cassia asked what defendant wanted to do, he answered, "that is up to you sweetie[.]" Defendant suggested that he and Cassia meet at 1:00 p.m. on 13 December, and Cassia agreed. He stated, "I get the feeling that you are wanting to talk about sex[.]" Cassia said "sure," and defendant then stated that sex was something he would talk about in person. Defendant then asked Cassia if she was a virgin and also asked for her telephone number. Cassia gave him a number that, unbeknownst to defendant, was a specific undercover number the RPD would use for Detective Marshburn's cases. Defendant said he would call Cassia later that evening, and he and Cassia also agreed to meet at the food court at the mall the next day. On 13 December 2007, defendant sent Cassia an offline instant message stating, "hey sweetie . . . sorry I didn't call, I will still be there at 1 today and I hope to see you there, bye for now sweetie." However, defendant and Cassia did not meet that day.

After the online chat of 12 December 2007, Detective Marshburn was able to identify the IP address of "moonraker1rain" and "dan claussen," and tracked it to a military base. Detective Marshburn then obtained a subpoena for the Internet carrier service, which identified defendant as the subscriber who had been chatting under those pseudonyms. On 16 December 2007, defendant sent three offline instant messages to Cassia. In one, he asked if they could meet the next night. Cassia did not respond and did not meet with defendant on 17 December. On 20 December 2007, defendant sent a chat message to

Cassia stating that he was going to be away for Christmas and would "catch back up" with Cassia after that. Cassia did not respond.

On 9 January 2008, defendant called Cassia on the telephone. During the course of the conversation, defendant told Cassia that she had a nice voice, and stated that he would come see her on Tuesday. He also stated that he could get in trouble for talking to Cassia because she was so young. When Cassia stated that she was nervous because she "never did this before," defendant replied that he had done so once, "but not with someone this young," adding that he and his previous paramour "just kissed." When Cassia asked if defendant liked younger girls, he replied in the affirmative because "[t]hey just look better, feel better." Defendant and Cassia agreed to meet in person at the food court at the mall, and agreed to chat more online so that Cassia could tell defendant "everything that [she] want[ed] to do."

Defendant and Cassia engaged in an online chat that day that lasted an hour. Defendant stated that he was still interested in meeting Cassia in person and asked again for her phone number, which she gave him. Defendant told Cassia that she "sound[ed] very sexy" and asked her "what all [she] want[ed] to get into" when he saw her. When Cassia asked if they were going to kiss, defendant replied, "if you want," and stated, "we can do more if you want." Defendant then asked if Cassia was "turned on," and told her, "I want you on top of me[.]" When Cassia asked, "like sex," defendant replied, "yeah." Defendant agreed to meet Cassia that afternoon. Cassia stated that she would be wearing her pink New York Yankees baseball cap. However, they did not meet. Defendant sent a chat message to Cassia stating that the reason he could not meet was because he locked his keys in his vehicle.

On 15 January 2008, defendant sent an offline instant message to Cassia stating that he would meet her at 9:30 that morning. Later that morning, defendant and Cassia agreed that they would meet at 11:30 a.m. at the food court at the mall. At 10:00 that morning, Detective Marshburn was sitting at a table in the food court of the mall. Detective Regina Corcoran ("Detective Corcoran") of the RPD portrayed Cassia. Detective Corcoran was sitting at another table in the food court approximately 25 feet from Detective Marshburn. Detective Corcoran was wearing jeans, a sweatshirt, and a pink New York Yankees baseball cap and was pretending to listen to an Ipod. As defendant entered the food court and sat down across from Detective Corcoran, Detective Marshburn and Sergeant Gary Hinnant

("Sergeant Hinnant") of the RPD approached defendant and asked to speak with him. At that point, defendant stated, "I knew it."

Defendant was arrested and indicted on a charge of solicitation of a child by computer to commit an unlawful sex act. The trial commenced on 17 February 2009. At the close of the State's evidence, defendant moved to dismiss the charge, and the trial court denied the motion. Defendant then presented evidence. There is nothing in the record or transcript showing defendant renewed his motion at the close of all the evidence. On 19 February 2009, the jury returned a verdict of guilty. The trial court then sentenced defendant to a minimum term of four months to a maximum term of five months in the custody of the North Carolina Department of Correction and ordered defendant to register as a sex offender upon his release. Defendant appeals.

## II. MOTION TO DISMISS

[1] Defendant argues that the trial court erred in denying his motion to dismiss. We disagree.

As an initial matter, we note that defendant made a motion to dismiss at the conclusion of the State's case, but there is nothing in the record showing that he renewed his motion at the conclusion of all the evidence. N.C. R. App. P. 10(b)(3) (2009) states:

> A defendant in a criminal case may not assign as error the insufficiency of the evidence to prove the crime charged unless he moves to dismiss the action, or for judgment as in case of nonsuit, at trial. If a defendant makes such a motion after the State has presented all its evidence and has rested its case and that motion is denied and the defendant then introduces evidence, his motion for dismissal or judgment in case of nonsuit made at the close of State's evidence is waived. Such a waiver precludes the defendant from urging the denial of such motion as a ground for appeal.

Generally, if a defendant failed to renew his motion to dismiss after he presented evidence, he is precluded from challenging the denial of his motion to dismiss on appeal. *State v. Brunson*, 187 N.C. App. 472, 476, 653 S.E.2d 552, 555 (2007). "However, pursuant to N.C. R. App. P. 2, we will hear the merits of defendant's claim despite the rule violation because defendant also argues ineffective assistance of counsel based on counsel's failure to make the proper motion to dismiss." *State v. Gayton-Barbosa*, —— N.C. App. ——, ——, 676 S.E.2d 586, 593 (2009).

We review a trial court's denial of a motion to dismiss criminal charges *de novo*, to determine "whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense." *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). "Substantial evidence is evidence that a reasonable mind might find adequate to support a conclusion." *State v. Hargrave*, —— N.C. App. ——, ——, 680 S.E.2d 254, 261 (2009) (citation omitted). "The evidence is to be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom. . . ." *Powell*, 299 N.C. at 99, 261 S.E.2d at 117. "[C]ontradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve[.]" *State v. Prush*, 185 N.C. App. 472, 478, 648 S.E.2d 556, 560 (2007). " 'The test of the sufficiency of the evidence on a motion to dismiss is the same whether the evidence is direct, circumstantial, or both. All evidence actually admitted, both competent and incompetent, which is favorable to the State must be considered.' " *State v. Israel*, 353 N.C. 211, 216, 539 S.E.2d 633, 637 (2000) (quoting *State v. Bullard*, 312 N.C. 129, 160, 322 S.E.2d 370, 388 (1984)). "In addition, the defendant's evidence should be disregarded unless it is favorable to the State or does not conflict with the State's evidence." *State v. Scott*, 356 N.C. 591, 596, 573 S.E.2d 866, 869 (2002) (citation omitted).

The crime of solicitation of a child by computer to commit an unlawful sex act is defined as follows:

> A person is guilty of solicitation of a child by a computer if the person is 16 years of age or older and the person knowingly, with the intent to commit an unlawful sex act, entices, advises, coerces, orders, or commands, by means of a computer, a child who is less than 16 years of age and at least 3 years younger than the defendant, or a person the defendant believes to be a child who is less than 16 years of age and who the defendant believes to be at least 3 years younger than the defendant, to meet with the defendant or any other person for the purpose of committing an unlawful sex act. Consent is not a defense to a charge under this section.

N.C. Gen. Stat. § 14-202.3(a) (2007).[2]

---

2. After defendant's offense date, our General Assembly adopted a series of amendments to this statute, including, *inter alia*, enticing "by means of a computer or any other device capable of electronic data storage or transmission," and stating that the age difference between the defendant and the victim or perceived victim is to be five years. *See* N.C. Gen. Stat. § 14-202.3(a) (2009).

In the instant case, defendant was 32 years old and Cassia stated she was 14 years of age. On 7 December 2007, defendant and Cassia engaged in a chat on NC Romance. During the chat, defendant asked Cassia if she was "looking for a hook up." When Cassia responded that she liked to "hang out and have fun," defendant asked if she was into "anything sexual" and asked her if she wanted to "have good sex with [defendant]." Defendant and Cassia then exchanged photos and defendant asked Cassia her age. When Cassia replied that she was fourteen, defendant stated, "oh, i [sic] am sorry, I thought you were older," but later asked, "so, if we were to meet, how would we do it?" During the same chat, defendant subsequently asked Cassia if she wanted to "go somewhere and park" and "see how it goes."

On 12 December 2007, defendant, now using the pseudonym "dan claussen," and Cassia engaged in another chat on NC Romance. Defendant again asked Cassia her age. When Cassia responded that she was fourteen, defendant stated, "you are underage, and i [sic] am not . . . . I am apprehensive about meeting you in person . . . ." Defendant then stated that he and Cassia could meet in person "and see where it goes from there" and do things like "catch a movie at the mall, or just hang out, or find other things to get into." When Cassia asked what defendant meant by that statement, defendant responded, "I get the feeling that you are wanting to talk about sex . . .," and that "[t]hat is something we could talk about in person if you like." Defendant then agreed to meet Cassia the next day at the mall. Before signing off, defendant asked Cassia, "are you a virgin?" Defendant signed off by telling Cassia, "ok, bye sweetie."

On 9 January 2008, defendant spoke by telephone with Detective Marshburn. Defendant identified himself by his middle name, Dan, and Detective Marshburn identified herself as Cassia. During that conversation, defendant told Cassia she had a "nice voice." He then stated, "I can just get in trouble for talking to you . . . [c]ause [sic] you're young." When Cassia stated that she was nervous because she "never did this before," defendant said "[w]ell, I have once, but not with someone this young[.]" When Cassia asked defendant what he did on that prior occasion, defendant said, "we just kissed and stuff." Defendant asked Cassia if she liked "older guys." She replied in the affirmative, then asked defendant if he liked "younger girls." He replied, "[y]eah, I do . . . [because] [t]hey just look better, feel better . . . ." Defendant and Cassia engaged in another chat on NC Romance that day. Defendant told Cassia, "you sound very sexy" and stated he wanted "to do whatever you are curious about or

want to try." When Cassia asked defendant if they were going to kiss, defendant replied, "if you want . . . we can do more if you want[.]" Defendant then asked Cassia, "are you turned on at all right now?" Defendant stated that he was also turned on and told Cassia, "I want you on top of me . . . ." Cassia replied, "like sex," and defendant answered "yeah." On 15 January 2008, defendant and Detective Marshburn engaged in another chat on NC Romance. Defendant agreed to meet Cassia at the mall at 11:30 a.m. that day. Substantial evidence sustained the jury verdict of guilty of solicitation of a person the defendant believed to be a child, by means of a computer, for the purpose of committing an unlawful sex act.

Defendant argues that there was no evidence that he "enticed or advised" Detective Marshburn to meet with him within the meaning of N.C. Gen. Stat. § 14-202.3(a). We disagree.

Defendant does not suggest definitions for these words. They are not defined in N.C. Gen. Stat. § 14-202.3(a), nor can we find any case law in our state providing us with a definition. When a word used in a statute is not explicitly defined by that statute, the General Assembly is presumed to have used the word to convey its natural and ordinary meaning. *State v. Worley,* —— N.C. App. ——, ——, 679 S.E.2d 857, 861 (2009). " 'The best indicia of [the legislature's] intent are the language of the statute or ordinance, the spirit of the act and what the act seeks to accomplish.' " *State v. Abshire,* 363 N.C. 322, 330, 677 S.E.2d 444, 450 (2009) (quoting *Coastal Ready-Mix Concrete Co. v. Bd. of Comm'rs of Town of Nags Head,* 299 N.C. 620, 629, 265 S.E.2d 379, 385 (1980)). The purpose of statutes such as N.C. Gen. Stat. § 14-202.3 is to protect children against exploitation. *Outmezguine v. State,* 97 Md. App. 151, 166, 627 A.2d 541, 548 (1993); *Bone v. State,* 771 N.E.2d 710, 717 (Ind. App. 2002); *Ward v. State,* 994 So.2d 293, 300 (Ala. Crim. App. 2007); PROTECT Act, Pub. L. No. 108-21, § 1(a), 117 Stat. 650, 650 (2003).

"Webster's Ninth New Collegiate Dictionary . . . defines 'advise' as 'recommend[.]' " *People v. Hatcher,* 392 Ill. App. 3d 163, 167, 910 N.E.2d 757, 761 (2009) (citing WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 59 (1988)).

Entice has been defined as: "to lure; to lead on by exciting hope of reward or pleasure; to tempt," *Webster's New 20th Century Dictionary* (2d ed. 1960), and "[t]o wrongfully solicit, persuade, procure, allure, attract, draw by blandishment, coax or

seduce. . . . To lure, induce, tempt, incite, or persuade a person to do a thing." *Black's Law Dictionary* 531 (6th ed. 1990).

*State v. Scieszka*, 897 P.2d 1224, 1226 (Utah Ct. App. 1995); *State v. Hansen*, 750 N.W.2d 111, 114 (Iowa 2008); *Government of Virgin Islands v. Berry*, 604 F.2d 221, 225 n. 6 (1979), *superseded on other grounds by statute*, 14 V.I.C. § 1052(b) (2009); *Bayouth v. State*, 294 P.2d 856, 863 (Okla. Crim. App. 1956). We believe that defendant's words to Cassia fall within these rather broad definitions, particularly when the entire online and telephone conversations are considered. *Hatcher*, 392 Ill. App. 3d at 167, 910 N.E.2d at 761. "We do not find [the above] definitions at all inconsistent with defendant's conduct. On the contrary, they accurately describe his course of conduct." *Scieszka*, 897 P.2d at 1226. Defendant's assignment of error is overruled.

### III.  PLAIN ERROR

[2] Defendant argues that the trial court committed plain error in allowing Detective Marshburn to give opinion testimony. We disagree.

Under the plain error standard of review, defendant has the burden of showing: " '(i) that a different result probably would have been reached but for the error or (ii) that the error was so fundamental as to result in a miscarriage of justice or denial of a fair trial.' " *State v. McNeil*, 165 N.C. App. 777, 784, 600 S.E.2d 31, 36 (2004) (quoting *State v. Bishop*, 346 N.C. 365, 385, 488 S.E.2d 769, 779 (1997)). "Indeed, even when the 'plain error' rule is applied, '[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.' " *State v. Odom*, 307 N.C. 655, 660-61, 300 S.E.2d 375, 378 (1983) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S. Ct. 1730, 1736, 52 L. Ed. 2d 203, 212 (1977)).

"Statements elicited by a defendant on cross-examination are, even if error, invited error, by which a defendant cannot be prejudiced as a matter of law." *State v. Gobal*, 186 N.C. App. 308, 319, 651 S.E.2d 279, 287 (2007) (citing *State v. Greene*, 324 N.C. 1, 11, 376 S.E.2d 430, 437 (1989), *vacated on other grounds*, 494 U.S. 1022, 110 S. Ct. 1465, 108 L. Ed. 2d 603 (1990)); N.C. Gen. Stat. § 15A-1443(c) (2007) ("A defendant is not prejudiced by the granting of relief which he has sought or by error resulting from his own conduct."); *see also State v. Chatman*, 308 N.C. 169, 177, 301 S.E.2d 71, 76 (1983) (holding

that the defendant could not assign error to testimony elicited by his counsel during a cross-examination of the State's witness).

In the instant case, the following exchange occurred when defendant's counsel cross-examined Detective Marshburn:

Q: And one last question. In your last chat [defendant] said he was coming to Raleigh, which is State's Exhibit Number 17.

A: Um-hum.

Q: Just to be sure, there is no specific references [sic] to any sex act; is that correct?

A: That's correct.

Q: So you don't know why he was coming to Raleigh on that day.

A: It is my opinion he was coming to Raleigh to have sex with a 14 year old.

Q: But you don't know that.

A: That's my opinion.

Even assuming *arguendo* the elicited statements above are error, defendant cannot be prejudiced by them as a matter of law because he invited them. *Gobal*, 186 N.C. App. at 319, 651 S.E.2d at 287. Defendant's assignment of error is overruled.

## IV.  INEFFECTIVE ASSISTANCE OF COUNSEL ("IAC")

[3] In the alternative, defendant urges this Court to hold that he was denied the effective assistance of counsel because his trial counsel: (1) failed to renew his motion to dismiss at the close of all the evidence, and (2) elicited and failed to move to strike Detective Marshburn's lay opinion testimony. We disagree.

"Claims of ineffective assistance of counsel are . . . most properly raised in a motion for appropriate relief." *State v. Jones*, 176 N.C. App. 678, 688, 627 S.E.2d 265, 271 (2006). "Our Supreme Court has held that an ineffective assistance claim brought on direct review will be decided on the merits only 'when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing.' " *Id.* (quoting *State v. Fair*, 354 N.C. 131, 166, 557 S.E.2d 500, 524 (2001)).

"To prevail on a claim of ineffective assistance of counsel, a defendant must first show that his counsel's performance was deficient and then that counsel's deficient performance prejudiced his defense." *State v. Allen*, 360 N.C. 297, 316, 626 S.E.2d 271, 286 (2006) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). "Deficient performance may be established by showing that counsel's representation fell below an objective standard of reasonableness." *Id.* (internal quotations and citations omitted). "Generally, to establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (internal quotations and citations omitted).

As for defendant's first IAC argument, if the evidence is sufficient to support a conviction, the defendant is not prejudiced by his counsel's failure to make a motion to dismiss at the close of all the evidence. *Gayton-Barbosa*, —— N.C. App. at ——, 676 S.E.2d at 594. Since we have found that the evidence in the instant case was sufficient to support the jury's verdict, "defendant has not shown counsel's assistance to be constitutionally inadequate, [and thus his] assignment of error is without merit." *Id.* at ——, 676 S.E.2d at 594.

As for defendant's second IAC argument, "[t]he fact that counsel made an error, even an unreasonable error, does not warrant reversal of a conviction unless there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings." *State v. Braswell*, 312 N.C. 553, 563, 324 S.E.2d 241, 248 (1985) (citing *Strickland*, 466 U.S. at 695, 104 S. Ct. at 2068-69, 80 L. Ed. 2d at 698). The online chats and the telephone call between defendant and Detective Marshburn provide overwhelming evidence that defendant thought Detective Marshburn was a 14-year-old girl and that defendant was meeting her at the mall for a sexual encounter. Even if defendant's counsel had not elicited or had moved to strike Detective Marshburn's lay opinion testimony, there was no reasonable probability that a different outcome would have resulted.

## V. CONCLUSION

[4] Defendant's remaining assignments of error not argued in his brief are abandoned. N.C. R. App. P. 28(b)(6) (2009). Defendant received a fair trial free from error.

IN RE S.T.P.

[202 N.C. App. 468 (2010)]

No error.

Judges WYNN and BEASLEY concur.