IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA18-952-2

Filed: 31 December 2020

Granville County, No. 02 CRS 51192

STATE OF NORTH CAROLINA

v.

VINCENT LAMONT HARRIS, Defendant.

Appeal by defendant from order entered 19 February 2018 by Judge Quentin T. Sumner in Granville County Superior Court. Heard in the Court of Appeals 8 May 2019, and decided by this Court in a decision issued 2 July 2019. On review in the Court of Appeals by reconvening order of the Supreme Court issued 30 September 2019, and entered in this Court 1 October 2019.

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General Sonya Calloway-Durham, for the State.*

> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender Michele A. Goldman, for defendant-appellant.*

YOUNG, Judge.

Vincent Lamont Harris (defendant) appealed from the trial court's order requiring him to submit to satellite-based monitoring (SBM) for life. On appeal, this Court concluded that the State failed to meet its burden of showing the reasonableness of the imposition of SBM, and reversed. This matter has come before us once more on a reconvening order, to be reconsidered in light of our Supreme

Court's decision in *State v. Grady*, ___ N.C. ___, 831 S.E.2d 542 (2019). We hold that *Grady* is inapplicable to the instant case, and therefore reaffirm our prior decision, and reverse.

### I. Factual and Procedural Background

The facts of this case were set out in greater detail in our previous decision in this matter, *State v. Harris*, 266 N.C. App. 241, 829 S.E.2d 525 (2019) (unpublished). The salient facts, in short, are as follows: Defendant was arrested on a warrant and charged with second-degree rape. Defendant was found guilty and sentenced to a prison term. Subsequently, the trial court held a hearing on whether defendant was eligible for SBM, after which the court entered an order finding that defendant committed an aggravated offense, and requiring defendant to enroll in SBM for the remainder of his natural life. Defendant appealed from this order.

On appeal, this Court held that the State's burden at the SBM hearing was, in part, to show that defendant posed a threat of reoffending, such that SBM would be reasonable. We held that the State had failed to meet this burden, and reversed.

Subsequently, our Supreme Court entered its decision in *State v. Grady*, ___ N.C. ___, 831 S.E.2d 542 (2019). The Court held that the SBM statute was categorically unconstitutional as applied to those who were only eligible for SBM on the basis of a finding of recidivism. As a result of this decision, this Court has entered reconvening orders on many of our recent SBM decisions, to be reconsidered in light

of the *Grady* decision. Such is the case before us. The question for this Court is whether our Supreme Court's decision in *Grady* impacts our decision in the instant case, and if so, whether a change in our opinion is required.

## II. *Grady*

In *Grady*, the defendant conceded that he met the statutory definition of a recidivist – "that is, a person who has a prior conviction for a reportable offense." *Grady*, ___ N.C. at ___, 831 S.E.2d at 549; *see also* N.C. Gen. Stat. § 14-208.6(2b) (2017). The question before the Court was whether the imposition of SBM, which included "the GPS monitoring device itself and the 24/7 tracking[,]" was unconstitutional, either as a program altogether or as applied to the defendant.

The Court pursued extensive review. It noted, for example, that "the primary purpose of SBM is to solve crimes." *Id.* at ___, 831 S.E.2d at 556. The Court noted, however, that this alone was not sufficient to hold the program to constitute a reasonable search; rather, it was necessary to review the totality of the circumstances, comparing the intrusion on the defendant's Fourth Amendment interests with the promotion of legitimate governmental interests. *Id.* at ___, 831 S.E.2d at 557.

The Court held that defendants, having served their prison sentences and whose legal rights have been restored, did not have "a diminished expectation of privacy in their persons and in their physical locations at any and all times of the day

or night for the rest of their lives." *Id*. at ___, 831 S.E.2d at 561. As such, these individuals were still entitled to their Fourth Amendment right to privacy. The Court further held that,

> in light of the physical intrusiveness of the [physical device], the quarterly equipment checks, and the extent to which GPS locational tracking provides an "intimate window" into an individual's "privacies of life," we conclude that the mandatory imposition of lifetime SBM on an individual in defendant's class works a deep, if not unique, intrusion upon that individual's protected Fourth Amendment interests.

*Id*. at ___, 831 S.E.2d at 564.

Finally, the Court examined the State's argument that imposing SBM promoted the legitimate governmental interest in preventing crime. The Court held:

> It is well established that the State bears the burden of proving the reasonableness of a warrantless search. *Coolidge*, 403 U.S. at 455, 91 S.Ct. 2022. While the State's asserted interests here are without question legitimate, what this Court is duty bound to determine is whether the warrantless search imposed by the State on recidivists under the SBM program actually serves those legitimate interests. The State has the burden of coming forward with some evidence that its SBM program assists in apprehending sex offenders, deters or prevents new sex offenses, or otherwise protects the public. Simply put, as the U.S. Supreme Court explained in *Ferguson v. City of Charleston*, "the gravity of the threat alone cannot be dispositive of questions concerning what means law enforcement officers may employ to pursue a given purpose." 532 U.S. 67, 86, 121 S.Ct. 1281, 149 L.Ed.2d 205 (2001) (quoting *Edmond*, 531 U.S. at 42, 121 S.Ct. 447). Here, despite having the burden of proof, the State concedes that it did not present any evidence tending to

show the SBM program's efficacy in furthering the State's legitimate interests. *Grady*, 817 S.E.2d at 27. We cannot simply assume that the program serves its goals and purposes when determining whether the State's interest outweighs the significant burden that lifetime SBM imposes on the privacy rights of recidivists subjected to it. *Cf. Doe v. Cooper*, 842 F.3d 833, 846 (4th Cir. 2016) ("[N]either anecdote, common sense, nor logic, in a vacuum, is sufficient to carry the State's burden of proof. Thus, while the State's argument may be conceptually plausible, it presented no evidence or data to substantiate it before the district court." (citing *United States v. Carter*, 669 F.3d 411, 418–19 (4th Cir. 2012))).

To be clear, the scope of North Carolina's SBM program is significantly broader than that of other states. Lifetime monitoring for recidivists is mandated by our statute for anyone who is convicted of two sex offenses that carry a registration requirement. A wide range of different offenses are swept into this category. For example, a court is required to impose lifetime SBM on an offender who twice attempts to solicit a teen under the age of sixteen in an online chat room to meet with him, regardless of whether the person solicited was actually a teen or an undercover officer, or whether any meeting ever happened. See N.C.G.S. § 14-202.3 (2017); *State v. Fraley*, 202 N.C. App. 457, 688 S.E.2d 778, *disc. rev. denied*, 364 N.C. 243, 698 S.E.2d 660 (2010). Not only does the lifetime imposition of SBM vastly exceed the likely sentence such an offender would receive on a second offense, in addition, the State has simply failed to show how monitoring that individual's movements for the rest of his life would deter future offenses, protect the public, or prove guilt of some later crime.

Applying the correct legal standard to the record in this case, we conclude that the State has not met its burden of establishing the reasonableness of the SBM program under the Fourth Amendment balancing test required for warrantless searches. In sum, we hold that recidivists, as

defined by the statute, do not have a greatly diminished privacy interest in their bodily integrity or their daily movements merely by being also subject to the civil regulatory requirements that accompany the status of being a sex offender. The SBM program constitutes a substantial intrusion into those privacy interests without any showing by the State that the program furthers its interest in solving crimes that have been committed, preventing the commission of sex crimes, or protecting the public. In these circumstances, the SBM program cannot constitutionally be applied to recidivists in Grady's category on a lifetime basis as currently required by the statute.

*Id*. at ___, 831 S.E.2d at 568.

The Court, in its conclusion, narrowly tailored its holding. The Court held that "[t]he generalized notions of the dangers of recidivism of sex offenders, for which the State provided no evidentiary support, cannot justify so intrusive and so sweeping a mode of surveillance upon individuals, like defendant, who have fully served their sentences and who have had their constitutional rights restored." *Id*. at ___, 831 S.E.2d at 569. The Court therefore determined that "no circumstances exist" in which the imposition of SBM on a recidivist would be constitutionally valid, and therefore that SBM was categorically unconstitutional as applied to recidivists. *Id*. at ___, 831 S.E.2d at 570. However, the Court clarified that its decision "does not address whether an individual who is classified as a sexually violent predator, or convicted of an aggravated offense, or is an adult convicted of statutory rape or statutory sex offense with a victim under the age of thirteen may still be subjected to mandatory

lifetime SBM—regardless of whether that individual is also a recidivist." *Id*. at ___, 831 S.E.2d at 572. The decision was specific to those defendants enrolled in SBM exclusively on the basis of having attained the status of a recidivist, and for no other reason.

### III. Reconvening Review

Our prior decision in the instant case, however, was not premised upon defendant's recidivist status. Indeed, in the trial court's judicial findings on SBM, it did not find defendant to be a recidivist, but rather found as its basis for imposing SBM that defendant committed an aggravated offense. Rather, it was premised upon the State's failure to meet its evidentiary burden. We specifically held that "[t]he State presented no testimony about the degree of likelihood of the defendant to reoffend, no evidence of other offenses that would leave anyone to believe the defendant would reoffend and no evidence of efficiency [sic] of SBM." *Harris*, 266 N.C. App. 241, 829 S.E.2d 525. We concluded that, because the State had failed to meet this burden, the trial court's order was subject to reversal. Moreover, because the State was not entitled to a second chance to meet that burden, this was a reversal without remand.

We recognize and respect the authority established by our Supreme Court in *Grady*. However, that case was explicitly limited to matters concerning recidivism. Our prior decision in this matter was not premised upon the defendant's status as a

recidivist, but upon the State's failure to meet its evidentiary burden. Moreover, our prior decision in this matter concerned a defendant who committed an aggravated offense; the Court in *Grady* explicitly noted that its holding did not apply to such a situation. Accordingly, we hold that our previous decision in this matter was properly decided, and for the same reasons as in that case, we reverse the order of the trial court imposing SBM.[1]

REVERSED.

Judge HAMPSON concurs.

Judge STROUD dissents in a separate opinion.

---

[1] The dissent raises the issue of the reasonableness of SBM during and after post-release supervision. However, because this issue was not properly preserved by argument at trial, we decline to consider it.

STROUD, Judge, concurring in part and dissenting in part.

I respectfully concur in part and dissent in part. I concur with the majority's opinion as to imposition of SMB while Defendant is under post-release supervision. I dissent from the majority's opinion as to imposition of SBM after Defendant is released from supervision.

The majority notes that Defendant failed to preserve the issue of reasonableness of SBM during and after post-release supervision. I believe this issue was preserved for review because the Defendant filed a "Motion to Dismiss State's Petition for Satellite-Based Monitoring and to Declare Satellite-Based Monitoring Unconstitutional," specifically noting arguments regarding the reasonableness of SBM and the trial court held a hearing on this motion before entering the SBM order. In the motion, Defendant argued that if the trial court ordered SBM, it must "impose SBM for a period of time no longer than the search would continue to be reasonable under the Fourth Amendment and Article I, § 20." Defendant also argued these issues in his briefs on appeal. I would find that Defendant preserved this issue for review.

At the time of the trial court's SBM order, Defendant had already served his sentence for second degree rape and had been released from custody on 27 August 2016; he was to remain on post-release supervision for five years. *See* N.C. Gen. Stat. § 15A-1368.2(c) (2019). I believe this Court is bound to follow *State v. Hilton*, ___ N.C. App. ___, 845 S.E.2d 81 (2020), where this Court held that "imposition of SBM on

Defendant *during the period of his post-release supervision* constitutes a reasonable search[,]" but reversed and remanded the trial court's order based upon its conclusion that "the imposition of SBM [after expiration of post-release supervision] is unreasonable". *Id.* at ___ 845 S.E.2d at 83. I do not believe the procedural and factual circumstances of this case can be materially distinguished from *Hilton,* and thus we are bound to follow that precedent, at least until our Supreme Court directs otherwise in the SBM cases currently under review. *See In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court."). And despite a dissent in *Hilton*, *Hilton* was not appealed for further review by our Supreme Court. *See State v. Hilton*, ___ N.C. App. ___, 845 S.E.2d 81.

I would therefore "affirm the trial court's order to the extent that it imposes SBM on Defendant for the remainder of his post-release supervision" and "reverse the trial court's order to the extent that the order imposes SBM *beyond* Defendant's period of post-release supervision" with remand for further proceedings. *Id. at ___,* 845 S.E.2d at 88.