# Illinois Official Reports

## Appellate Court

---

### *People v. White*, 2017 IL App (1st) 130882

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. CORBITT WHITE, Respondent-Appellant. |
| District & No. | First District, First Division<br>Docket No. 1-13-0882 |
| Filed | May 8, 2017 |
| Rehearing denied | June 16, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CR-4187; the Hon. Timothy Joseph Joyce, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Amy P. Campanelli, Public Defender, of Chicago (Ingrid A. Gill, of counsel), for appellant. |
| | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Mary L. Boland, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE MIKVA delivered the judgment of the court, with opinion.<br>Presiding Justice Connors and Justice Simon concurred in the judgment and opinion. |

**OPINION**

¶ 1    Corbitt White was found to be a sexually dangerous person and, pursuant to the Sexually Dangerous Persons Act (SDPA) (725 ILCS 205/1.01 *et seq.* (West 2010)), was committed to the custody of the Illinois Department of Corrections until a court finds him no longer dangerous. On appeal, Mr. White argues that his rights to due process, to confrontation, and against self-incrimination under the United States and Illinois Constitutions were violated because he was required by court order to participate in the mental health evaluations required by the SDPA, based on a petition that did not meet the requirements of the SDPA and before the State had elected to proceed solely under the SDPA. For the following reasons, we affirm the judgment of the circuit court.

¶ 2                                                    BACKGROUND

¶ 3    On March 6, 2009, Mr. White was charged by indictment with five counts of aggravated criminal sexual assault, six counts of aggravated kidnapping, one count of criminal sexual assault, and two counts of kidnapping. According to the criminal complaint, on August 22, 2006, Mr. White threatened the victim with a knife and forced her into his vehicle, where he bound her hands behind her back and forcefully placed his penis into her vagina.

¶ 4    Following the indictments, the parties began the pretrial discovery process. On June 19, 2009, the State filed a motion to introduce other-crimes evidence in Mr. White's criminal case to show his propensity to commit sex offenses (see 725 ILCS 5/115-7.3 (West 2008)), including Mr. White's 1988 convictions for aggravated criminal sexual assault, home invasion, and armed robbery, for which he was sentenced to 30 years' incarceration and released on parole in 2004.

¶ 5    On February 26, 2010, the State filed a document titled "Petition to Evaluate Defendant as a Sexually Dangerous Person." The petition stated that it was filed pursuant to the SDPA. The petition included detailed summaries of the allegations against Mr. White in the underlying criminal case, as well as the crimes for which Mr. White was convicted in 1988. The prayer for relief asked the circuit court to enter an order appointing two qualified psychiatrists to examine Mr. White to ascertain whether he was a sexually dangerous person and then file their results in writing with the court.

¶ 6    Mr. White moved to dismiss the State's February 2010 petition on the basis that it contained insufficient facts to support the State's assertion that he was a sexually dangerous person as defined by the SDPA. During the hearing on Mr. White's motion to dismiss the petition, defense counsel argued that the State was putting the "cart before the horse" and had filed the petition without showing "any type of good faith basis to believe Mr. White suffer[ed] from any mental disorders." The assistant State's Attorney's response was that the February 2010 petition was merely a request, as the "preliminary first step" to have Mr. White evaluated by two psychiatrists, and that the State was "not filing a petition to have him declared a sexually dangerous person" at that time. The assistant State's Attorney explained that, if the psychiatrists did not come to the conclusion that Mr. White was a sexually dangerous person, the State would not request a hearing under the SDPA and would instead pursue the underlying criminal charges. The assistant State's Attorney also stated that, if the psychiatric evaluations indicated that Mr. White did qualify as a sexually dangerous person under the SDPA, then the State would file a subsequent petition to request a hearing to have him declared sexually

dangerous. Responding to the State's declared intentions, defense counsel insisted that the State was required to file a petition that complied with the requirements set forth in the SDPA before Mr. White could be ordered to be examined by a psychiatrist.

¶ 7    The circuit court denied Mr. White's motion to dismiss and ordered Mr. White to be evaluated as a sexually dangerous person by two qualified psychiatrists. In its ruling, the court stated that "the statute *** requires the State to file [a] petition in writing setting forth facts tending to show that the person named is a sexually dangerous person as defined in the statute" and found that "the petition [the State] filed meets that burden."

¶ 8    Following the court's ruling, defense counsel expressed concern that statements made by Mr. White during those evaluations could be used against him substantively or for impeachment purposes in the underlying criminal case, such that forcing Mr. White to undergo the evaluations would violate his rights under the fifth and sixth amendments. The court responded that "the State would be precluded from using those statements in any proceeding other than on a petition to have the defendant found a sexually dangerous person."

¶ 9    Mr. White filed a motion to reconsider the circuit court's ruling. As part of that motion, Mr. White argued that forcing him to discuss the underlying criminal case with the evaluators would "give[ ] the State a preview of [his] defenses at trial" and his right to a fair trial "should not be impinged upon absent a showing that [he] suffer[ed] from a mental disorder." The court denied Mr. White's motion to reconsider on May 26, 2010, reaffirming its finding that "the State has set forth sufficient facts in the petition to warrant the evaluation."

¶ 10    Also on May 26, 2010, Dr. Peter Lourgos, assistant director of the forensic clinical services institute of the circuit court of Cook County, filed a letter informing the circuit court that Mr. White had been "uncooperative" and refused to participate in the first evaluation, thereby preventing the doctor from rendering an opinion. The court entered an order instructing Mr. White to cooperate with the evaluation.

¶ 11    At the May 26, 2010, hearing on Mr. White's motion to reconsider, after the circuit court had denied Mr. White's motion, the assistant State's Attorney stated:

"Judge, just to expedite matters, since we are going to need two psychiatrists to evaluate him, perhaps give it a mid-July date. Should the psychiatric institute come back with a report indicating that he doesn't fit the definition of mental disorder, the State has also filed a motion for proof of other crimes. We filed that some time ago. I am not sure if Counsel has responded to that. Perhaps get a response and maybe have Your Honor make a decision with respect to that so we can set this down for trial, whether or not we are proceeding as a sexually dangerous person or whether or not we can just actually try to criminally charge."

The court did not rule on or order Mr. White's counsel to respond to the State's motion "for proof of other crimes" but simply directed the parties to return to court in June because the psychiatric reports regarding Mr. White would soon be filed.

¶ 12    On August 24, 2010, Dr. Lourgos filed a letter in which he stated that he examined Mr. White on June 18, 2010, and that

"Based on the above examination and review of the available records, it is my opinion within a reasonable degree of medical and psychiatric certainty that Corbitt White suffers from a mental disorder, specifically, sexual sadism, which has existed for a period not less than one year and is coupled with criminal propensities to the

- 3 -

commission of sex offenses. Hence, it is my opinion within a reasonable degree of medical and psychiatric certainty that Corbitt White meets the statutory criteria for a sexually dangerous person." (Emphasis omitted.)

¶ 13 The second evaluator, Dr. Monica Argumedo, another psychiatrist with the forensic clinical services institute, also filed a letter on August 24, 2010, in which she stated that she examined Mr. White on July 27, 2010. Dr. Argumedo's conclusions paralleled those of Dr. Lourgos: she found that Mr. White "manifest[ed] a mental disorder, mainly Sexual Sadism," that the condition had existed for a period of not less than one year, that the condition was coupled with a criminal propensity to the commission of sex offenses, and that, therefore, Mr. White met the statutory criteria for a sexually dangerous person.

¶ 14 On September 10, 2010, the circuit court ordered the forensic clinical services institute to tender to both parties "*any* and *all* notes, summaries, memoranda, and conclusions created in conjunction with the evaluation of Corbitt White as a sexually dangerous person." (Emphases in original.)

¶ 15 On September 28, 2010, the State filed a document titled "Petition to Declare Defendant a Sexually Dangerous Person." In this document, the State alleged that Mr. White met the statutory criteria for a sexually dangerous person and asserted that this conclusion was supported by the opinions of the two psychiatrists as described in their letters filed with the circuit court. This September 2010 petition alleged that "[f]or a period of not less than one year prior to the filing of this petition, defendant has had a 'mental disorder,' as used in the SDPA" and also that there was "a substantial probability that [Mr. White] will engage in the commission of sexual assaults in the future if not confined." The relief requested in this petition was for the court to declare Mr. White a sexually dangerous person and appoint the Director of Corrections as his guardian.

¶ 16 Mr. White voluntarily waived his right to a jury trial, and his commitment hearing began on December 18, 2012. The State's case consisted of testimony from Dr. Lourgos and Dr. Argumedo, who each testified at length about their evaluations of Mr. White, reaffirming their opinions that Mr. White met the statutory definition of a sexually dangerous person. Each witness was cross-examined by defense counsel. The State also introduced certified copies of Mr. White's 1988 convictions for aggravated criminal sexual assault, home invasion, and armed robbery, as well as copies of several other convictions for crimes Mr. White committed in the 1980s. Mr. White elected not to call any witnesses and chose not to testify on his own behalf.

¶ 17 On January 9, 2013, the circuit court found that the State had proved beyond a reasonable doubt that Mr. White suffered from two mental disorders, sexual sadism and antisocial personality disorder; that these mental disorders had existed for a period of not less than one year prior to the filing of the petition; that they revealed criminal propensities toward commission of sex offenses, acts of sexual assault, or acts of sexual molestation of children; and that, as a result, it was substantially probable that Mr. White, if not committed, would commit additional acts of sexual assault. Accordingly, the court adjudged Mr. White to be a sexually dangerous person.

¶ 18 Mr. White filed a motion to set aside this finding or, in the alternative, for a new hearing. Mr. White argued that the State did not allege any facts in its February 2010 petition to show that he was suffering from a mental disorder that would qualify him as a sexually dangerous person under the SDPA, that at the hearing the State failed to prove beyond a reasonable doubt

that he was a sexually dangerous person, and that he did not receive a fair hearing because, in forming their opinions, the psychiatrists presumed he was guilty of the underlying criminal charges for which he was never prosecuted or convicted.

¶ 19    The circuit court denied Mr. White's motion on February 7, 2013, and committed him to the custody of the Director of Corrections in a facility designed for the care and treatment of sexual offenders. That same day, Mr. White filed his notice of appeal.

¶ 20    We have jurisdiction pursuant to Illinois Supreme Court Rules 301 and 303 governing appeals from final judgments in civil proceedings entered below. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. May 30, 2008). See *People v. Tapp*, 2012 IL App (4th) 100664, ¶ 4 (the rules governing civil appeals apply to proceedings under the SDPA).

¶ 21                                ANALYSIS

¶ 22    Mr. White argues that the February 2010 petition was insufficient to meet the statutory requirements for an SDPA petition and was not an election to proceed under the SDPA. Instead, it was merely a request for an evaluation by psychiatrists. Mr. White's claim on appeal is that the circuit court violated his rights under the fifth, sixth, and fourteenth amendments to the United States Constitution (U.S. Const., amends. V, VI, XIV) and article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, § 2) by requiring him to cooperate in psychiatric evaluations and discuss the facts of his pending criminal case before the State had properly elected to proceed under the SDPA or filed a sufficient SDPA petition.

¶ 23    The State argues in its brief on appeal that the February 2010 petition met the requirements of an SDPA petition and consequentially the State properly initiated and elected to proceed under the SDPA. The State's position in its brief is that its second September 2010 petition was unnecessary and was filed due to the State's mistaken belief that it was required to file a subsequent petition after the evaluations were complete. The State argues that this second petition did not invalidate or negate the validity of the February 2010 petition.

¶ 24    At oral argument, the State adjusted this argument in an attempt to convince this court that, in the event the February 2010 petition is viewed as insufficient under the SDPA, the State properly amended or supplemented that petition with its September 2010 petition. Accordingly, the State argues, long before the State proceeded to the hearing in this case on Mr. White's commitment under the SDPA, there was a petition on file that provided an appropriate basis for such a proceeding and there was a proper election by the State to proceed under the SDPA. The State also argues, both in its brief and at oral argument, that Mr. White's fifth amendment privilege against self-incrimination was fully protected because the State would not have been allowed to use any of Mr. White's statements to the evaluators in any subsequent criminal prosecution.

¶ 25    We initially must reject the position that the State takes in its briefing in this case that its February 2010 petition was, on its own, sufficient. As we noted at oral argument, we are particularly concerned with the State's failure to acknowledge in its brief that it expressly told the circuit court that the February 2010 petition was *not* a petition to have Mr. White committed under the SDPA but was instead only a petition to have him evaluated. We are also concerned with the State's failure to fully acknowledge in its brief that, after the circuit court ordered Mr. White to cooperate with the psychiatric evaluation, the State asked the court to rule on or have Mr. White's counsel respond to its motion seeking the admission of evidence of

Mr. White's other crimes in the criminal case, reflecting that the State had in fact not elected at that point to proceed solely under the SDPA.

¶ 26 However, we agree with the argument the State made at oral argument that the September 2010 petition was an adequate petition for proceeding under the SDPA and that, overall, the procedure employed by the State did not violate any of Mr. White's rights under fifth, sixth, or fourteenth amendments to the United States Constitution or under article I, section 2, of the Illinois Constitution. This court may affirm a decision of the circuit court on any basis that appears in the record (*People v. Olsson*, 2015 IL App (2d) 140955, ¶ 17 ("We review the trial court's judgment rather than its reasoning, and we may affirm on any basis supported by the record.")), and we uphold the commitment of Mr. White on this basis.

¶ 27                                                    A. The SDPA

¶ 28 The SDPA, which has been in existence in some form since 1938, allows the State to "seek an involuntary and indefinite commitment in lieu of criminal prosecution when a person believed to be sexually dangerous is charged with a criminal offense." *People v. Masterson*, 2011 IL 110072, ¶¶ 26-27. The purpose of the SDPA is twofold: "(1) to protect the public by sequestering a sexually dangerous person until such a time as the individual is recovered and released, and (2) to subject sexually dangerous persons to treatment such that the individual may recover from the propensity to commit sexual offenses and be rehabilitated." *People v. Trainor*, 196 Ill. 2d 318, 323-24 (2001).

¶ 29 Section 3 of the SDPA provides as follows:

"When any person is charged with a criminal offense and it shall appear to the Attorney General or to the State's Attorney of the county wherein such person is so charged, that such person is a sexually dangerous person, within the meaning of this Act, then the Attorney General or State's Attorney of such county may file with the clerk of the court in the same proceeding wherein such person stands charged with criminal offense, a petition in writing setting forth facts tending to show that the person named is a sexually dangerous person." 725 ILCS 205/3 (West 2010).

¶ 30 Under the SDPA, sexually dangerous persons are defined as:

"All persons suffering from a mental disorder, which mental disorder has existed for a period of not less than one year, immediately prior to the filing of the petition hereinafter provided for, coupled with criminal propensities to the commission of sex offenses, and who have demonstrated propensities toward acts of sexual assault or acts of sexual molestation of children ***." 725 ILCS 205/1.01 (West 2010).

¶ 31 At the time of Mr. White's SDPA proceeding, the SDPA also provided that:

"After the filing of the petition, the court shall appoint two qualified psychiatrists to make a personal examination of such alleged sexually dangerous person, to ascertain whether such person is sexually dangerous, and the psychiatrists shall file with the court a report in writing of the result of their examination, a copy of which shall be delivered to the respondent." 725 ILCS 205/4 (West 2010).

Since the time of Mr. White's hearing under the SDPA, this section of the statute has been amended to call for an evaluation by "two qualified evaluators," rather than "two qualified psychiatrists," but otherwise remains the same. 725 ILCS 205/4 (West 2014).

¶ 32    The SDPA further provides that, after the evaluators are appointed, a hearing is held to determine whether the respondent is sexually dangerous, and the evaluators' findings must be introduced at that hearing by direct testimony. 725 ILCS 205/5 (West 2010); see *People v. Covey*, 34 Ill. 2d 195, 197 (1966) (noting that at least one evaluator must testify in order to establish a *prima facie* case against the respondent). If the respondent is found to be a sexually dangerous person, the respondent is committed under the custody of the Director of Corrections who "shall provide care and treatment for the person committed to him designed to effect recovery." 725 ILCS 205/8 (West 2010). Upon rehabilitation and release, all outstanding indictments that served as the basis for the respondent's SDPA confinement are quashed. 725 ILCS 205/9(e) (West 2010); *Trainor*, 196 Ill. 2d at 324.

¶ 33    The SDPA is considered civil in nature, and the Code of Civil Procedure (735 ILCS 5/1-101 *et seq.* (West 2010)) generally applies to proceedings under it. 725 ILCS 205/3.01 (West 2010). However, because commitment under the SDPA results in loss of liberty, several essential protections are written into the SDPA, including the State's burden of proof being "beyond a reasonable doubt" (*id.*) and the rights for the respondent to have a jury trial and to be represented by counsel (725 ILCS 205/5 (West 2010)). See also *Trainor*, 196 Ill. 2d at 338 (noting these particular rights are "[o]f paramount importance").

¶ 34    As our supreme court made clear in *People v. Allen*, 107 Ill. 2d 91, 103 (1985), *aff'd*, 478 U.S. 364 (1986), "there is no privilege against self-incrimination in sexually dangerous person proceedings." The court noted, "[t]o allow even such a limited privilege would unduly frustrate the purposes of the sexually dangerous persons provisions by making it nearly impossible to identify sexually dangerous persons." *Id.* However, this does not mean that statements made by a defendant during his evaluation may lead to his criminal conviction if he is not deemed a sexually dangerous person—"a defendant's statements to a psychiatrist in a compulsory examination under the provisions here involved may not be used against him in any subsequent criminal proceedings." *Id.* at 104. The United States Supreme Court affirmed the decision in *Allen*, holding that, because the SDPA is civil in nature, requiring a defendant to cooperate with the evaluators appointed to determine whether that person is sexually dangerous under the SDPA does not violate the fifth amendment's guarantee against compulsory self-incrimination. *Allen*, 478 U.S. at 375.

¶ 35                                B. Mr. White's Claims
¶ 36                                1. Inadequate SDPA Petition
¶ 37    Mr. White argues that the February 2010 petition was insufficient to properly allege that he was a sexually dangerous person within the meaning of the SDPA. We agree.

¶ 38    The February 2010 petition was titled "Petition to Evaluate Defendant as a Sexually Dangerous Person." The record reflects that, during the hearing on Mr. White's motion to dismiss this petition, the assistant State's Attorney explicitly stated that the State had *not* filed a petition to have Mr. White declared a sexually dangerous person, that this was merely a request for him to be evaluated by psychiatrists, and that the State would file a petition for him to be declared a sexually dangerous person only if the evaluators' reports indicated that he would qualify as one. Thus, the State conceded in the circuit court that the February 2010 petition was not a sufficient petition on which to proceed under the SDPA and to have Mr. White committed as a sexually dangerous person.

¶ 39    Even without this concession by the State, it is apparent to us that the February 2010 petition did not meet the requirements for filing a petition under section 3 of the SDPA (725 ILCS 205/3 (West 2010)). The State argued in its brief that, by reciting facts regarding the crime that Mr. White was previously convicted of and charged with, the February 2010 petition contained facts "tending" to show that Mr. White was a sexually dangerous person. However, a sexually dangerous person, as defined by the SDPA, is a person "suffering from a mental disorder" for "a period of not less than one year" (725 ILCS 205/1.01 (West 2010)), and the SDPA defines "mental disorder" as "a congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence" (725 ILCS 205/4.03 (West 2010)). The February 2010 petition says nothing about a mental disorder, a congenital or acquired condition, or how long that condition has lasted. In addition, the prayer for relief in the February 2010 petition was to examine Mr. White—not to commit him. Such a petition does not meet the requirements of the SDPA, and it would have been improper to proceed to a commitment hearing solely on the basis of such a petition. See *People v. McDonald*, 44 Ill. App. 2d 348, 354 (1963) (reversing an SDPA commitment based on an insufficient petition that failed to allege facts tending to show that the person named was a sexually dangerous person).

¶ 40    On the other hand, all of the statutory requirements for an SDPA petition were satisfied when, after Mr. White was examined by Drs. Argumedo and Lourgos, the State filed its September 2010 petition, which specifically alleged that Mr. White met all criteria to be declared a sexually dangerous person under the SDPA, including that he had a mental disorder for a period of not less than one year prior to filing the petition and that both doctors had opined that this was so within a reasonable degree of medical and psychiatric certainty. The prayer for relief in the September 2010 petition was, appropriately, for a finding that Mr. White was a sexually dangerous person and that he be committed to the Director of Corrections as his guardian, in accordance with the SDPA.

¶ 41    The State's apparent rationale for proceeding the way that it did was that, until Mr. White was examined by mental health experts, the State had no information about whether he actually suffered from a mental disorder. Be that as it may, it does not change the fact that the initial February 2010 petition lacked key, statutorily required components to qualify under section 3 of the SDPA as a petition to proceed to a hearing to determine whether Mr. White was a sexually dangerous person.

¶ 42    Mr. White argues that, because the February 2010 petition was insufficient, his commitment under the SDPA must be reversed. We agree with the State, however, that we can also look at the September 2010 petition, which the State characterized at oral argument as a "supplemental petition," in order to decide whether the State had presented a sufficient petition on which to proceed under the SDPA.

¶ 43    In reference to the commitment hearing itself, we find no issue with considering the September 2010 and February 2010 petitions together to determine whether the State satisfied the requirements of section 3 of the SDPA. One of Mr. White's claims is that he did not receive due process, which would, of course, require sufficient notice of the basis for the State's petition. However, the September 2010 petition was filed over two years before Mr. White's commitment hearing on December 8, 2012. Mr. White clearly had ample notice long before the commitment hearing.

¶ 44    The filing of the September 2010 petition distinguishes this case from *McDonald*, 44 Ill. App. 2d 348, on which Mr. White relies. In *McDonald*, the circuit court's order committing the defendant pursuant to the SDPA was vacated where the State had proceeded on an inadequate petition, plus the State failed to file with the court the written finding of the psychiatrists or deliver a copy of it to the defendant. *Id.* at 354. Here, in contrast, there was an adequate petition on file long before Mr. White was tried and committed under the SDPA.

¶ 45    The SDPA specifically states that "proceedings under this Act shall be civil in nature." 725 ILCS 205/3.01 (West 2010). Accordingly, the Code of Civil Procedure would allow the State to amend or supplement its petition. See 735 ILCS 5/2-616(a) (West 2010) ("At any time before final judgment amendments may be allowed on just and reasonable terms, *** in any matter, either of form or substance, in any process, pleading, bill of particulars or proceedings, which may enable the plaintiff to sustain the claim for which it was intended to be brought ***."); 735 ILCS 5/2-609 (West 2010) ("Supplemental pleadings, setting up matters which arise after the original pleadings are filed, may be filed within a reasonable time by either party by leave of court and upon terms.").

¶ 46    Although there is no indication in the record that the State sought leave of court to file the September 2010 petition, nor is there any indication that Mr. White objected to its filing. Our supreme court has made it clear that, where a party does not object to an amendment filed without leave of court, that issue is waived. *Ragan v. Columbia Mutual Insurance Co.*, 183 Ill. 2d 342, 355 (1998). Thus, we agree with the State that the September 2010 petition provided an adequate legal basis for proceeding to Mr. White's commitment hearing under the SDPA.

¶ 47    The harder question is whether Mr. White's constitutional rights were violated when the circuit court required him, in May 2010, to participate in and cooperate with the psychiatric evaluations, although the State had not yet filed an adequate SDPA petition. Mr. White argues that this sequence of events resulted in a violation of his right to due process, right to confrontation, and right to remain silent.

¶ 48    Mr. White argues that his right to due process was violated because the SDPA requires a petition be filed *before* any evaluation is ordered. However, "[t]he fundamental requirements of due process are notice of the proceeding and an opportunity to present any objections." *People v. Cardona*, 2013 IL 114076, ¶ 15. In point of fact, the February 2010 petition gave Mr. White very specific notice regarding the purpose of the psychiatric evaluations, and he had an opportunity to present objections to the evaluations. We fail to discern a due process violation.

¶ 49    Mr. White does not explain why he believes that his right to confrontation was violated. However, Mr. White does not dispute that his counsel had ample opportunity at the commitment hearing to cross-examine all witnesses against him. Thus, we likewise cannot identify a violation of his right to confront adverse witnesses.

¶ 50    Finally, in reference to the right to remain silent, as discussed earlier in this opinion, "there is no privilege against self-incrimination in sexually dangerous person proceedings." *Allen*, 107 Ill. 2d at 103. Although Mr. White's compelled statements were obtained without the foundation of a sufficient SDPA petition, they were used solely in an SDPA proceeding. There was no subsequent criminal proceeding. Indeed, as discussed later in this opinion, nothing occurred in the criminal case after Mr. White was required to participate in the evaluations. On these facts, we see no basis to find that Mr. White's fifth, sixth, or fourteenth amendment rights were violated.

¶ 51                    2. State's Failure to Elect to Proceed Under the SDPA

¶ 52        Mr. White also argues that, because he was ordered to participate in the evaluations under the SDPA before the State had "elected" to proceed under the SDPA, he was deprived of due process and his fifth amendment rights were violated. Mr. White cites to the fact that at the May 26, 2010, hearing, the State suggested that the court rule on or order Mr. White's counsel to respond to the State's motion for the admission of proof of other crimes, which was pending in the criminal case. Mr. White cites *People v. Spurlock*, 388 Ill. App. 3d 365, 375 (2009), where the court noted that SDPA proceedings are " 'in lieu of a criminal prosecution' " (quoting *People v. Lawton*, 212 Ill. 2d 285, 288 (2004)) and that "[t]he legislature did not intend for both the criminal proceeding and the sexually dangerous persons commitment proceeding to go forward simultaneously on separate tracks."

¶ 53        The State, again failing to acknowledge the complete record, contends that, once the February 2010 petition was filed, it had elected to proceed solely under the SDPA. In its brief on appeal, the State mischaracterizes the assistant State's Attorney's statement at the May 26, 2010, hearing as having simply "informed the court that if the evaluation showed that [Mr. White] was not qualified to proceed under the SDPA, then the People had a pending other-crime motion to which [Mr. White] had not yet responded."

¶ 54        What the record instead reflects is that the State sought to have Mr. White evaluated as a sexually dangerous person without making a clear election to proceed only under the SDPA. This is evidenced by the assistant State's Attorney's suggestion to the circuit court at the May 26, 2010, hearing that it should rule on the State's motion regarding evidence of Mr. White's other crimes in order to "expedite" matters, in case the subsequent evaluations did not support commitment of Mr. White under the SDPA. It is also reflected in the fact that, at that time, the State had only requested that Mr. White be evaluated, not that he be committed. However, we do not believe that this failure to elect to proceed under the SDPA, again in the specific factual scenario of this case, supports Mr. White's constitutional claims.

¶ 55        First, the mere fact that there were criminal charges still pending against Mr. White certainly did not prohibit the State from pursuing Mr. White's adjudication as a sexually dangerous person. In fact, the opposite is true. Pending criminal charges are *required* for the State to initiate and undergo SDPA proceedings. 725 ILCS 205/3 (West 2010); *People v. Nastasio*, 19 Ill. 2d 524, 531 (1960) (proceedings under the SDPA are "wholly dependent on a criminal prosecution"). Those charges remain pending until the person found to be a sexually dangerous person under the SDPA is found to be no longer dangerous and is discharged. 725 ILCS 205/9(e) (West 2010).

¶ 56        Moreover, although the SDPA does not explicitly provide for such a scenario, in at least one case that we are aware of the State withdrew its election to proceed under the SDPA, opting instead to proceed on the underlying criminal charges. See *People v. Hughes*, 2012 IL 112817, ¶ 7 (wherein the defendant agreed to plead guilty to one offense in exchange for the State agreeing to dismiss the remaining criminal charges, withdraw its SDPA petition, and recommend a specific sentence). Mr. White's counsel conceded this possibility at oral argument. The *Spurlock* court, which is the case that Mr. White primarily relies on, also seems to recognize the State's ability to do this, noting, "we must construe the [SDPA] to provide for a stay of proceedings on the criminal complaint upon the filing of a sexually dangerous persons petition, *until* the issues concerning the accused's mental status are resolved." (Emphasis added.) *Spurlock*, 388 Ill. App. 3d at 375.

¶ 57    Mr. White contends that the failure to elect means that the State can order a criminal defendant to participate in an evaluation under the SDPA and then use what it learns from the defendant in that evaluation to aid in its investigation of the ongoing criminal case, even if the State would be barred, under *Allen*, from using the defendant's actual statements against him at a criminal trial. In the context of this case, at least, such a concern is only hypothetical. No criminal prosecution occurred, and thus the State could have made no use in Mr. White's criminal prosecution of whatever it might have learned from his evaluations. Since the only proceedings that occurred here, after Mr. White was compelled to cooperate in the evaluations, were proceedings under the SDPA, there can be no concern about a violation of Mr. White's fifth amendment rights.

¶ 58    In *People v. Bailey*, 405 Ill. App. 3d 154, 159, 172-73 (2010), the Appellate Court, Third District, held that the circuit court did not abuse its discretion in allowing the pending criminal charge and the SDPA petition to proceed simultaneously for years, with a guilty plea being accepted and then withdrawn, until, when it was time to set a trial date on the criminal charges, the prosecutor acknowledged that the sexually dangerous person petition should proceed first and, " 'if that is found, that may preclude the trial because I don't think you can take 2 bites of the same type of apple.' " The *Bailey* court noted that:

> "in cases where a sexually-dangerous-person petition has been filed, it may be to a defendant's advantage to have some of the initial proceedings on the underl[y]ing criminal charge and the sexually-dangerous-person petition occur simultaneously to reduce unnecessary delay and to provide the defendant with the ability to attack the underlying criminal charge, such as through a motion to suppress evidence or statements, as a method of also attacking the sexually-dangerous-person petition, which cannot stand in the absence of the underlying criminal charge." *Id.* at 174.

¶ 59    Regardless of whether we agree with this portion of the decision in *Bailey*, the situation before us is distinguishable because Mr. White's case did not proceed on two separate tracks. After the February 2010 petition was filed in this case, the only court proceedings that actually went forward were under the SDPA. Despite the assistant State's Attorney's request for a ruling on the State's motion to admit evidence of Mr. White's other crimes, there was no ruling on that motion, and defense counsel was not even ordered to respond to it. Thus, even if it would have been improper for the court below to have required Mr. White to continue to defend himself in the criminal case after he had been ordered to participate in the SDPA evaluations, nothing of that sort occurred here.

¶ 60    Mr. White's "election" argument relies heavily on the court's statement in *Spurlock* that a criminal prosecution and an SDPA proceeding cannot go forward simultaneously. *Spurlock*, 388 Ill. App. 3d at 375 (citing *Lawton*, 212 Ill. 2d at 288). However, *Spurlock* made this observation in the context of holding that the speedy trial statute (725 ILCS 5/103-5 (West 2006)) must be read to allow a stay of the speedy trial term while an SDPA petition is pending. *Spurlock*, 388 Ill. App. 3d at 375-76. The court's concern in *Spurlock* was that the State could not comply with the 120-day speedy trial term if it was trying to have a defendant examined under the SDPA. *Id.* at 376. *Spurlock* reversed a circuit court order that had dismissed both the criminal complaint and the SDPA petition for violation of the speedy trial act. *Id.* at 378-79. In context, it is clear that this language in *Spurlock* does not set out a requirement that, once a defendant has been ordered to participate in the SDPA evaluations, the State has "elected" to proceed solely under the SDPA. Even if *Spurlock* created a rule that the State's actions in this

case violated, we are not bound by other appellate court decisions (*O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 440 (2008)), particularly in light of more recent appellate court decisions that suggest no such rule exists (see, *e.g.*, *Bailey*, 405 Ill. App. 3d at 173-74 (allowing SDPA proceedings and the underlying criminal proceedings to proceed simultaneously)).

¶ 61    The *Lawton* decision certainly did not set out this requirement. Rather, it simply described the SDPA as a statute that "permits the State to seek an involuntary, indeterminate commitment in lieu of a criminal prosecution." *Lawton*, 212 Ill. 2d at 288. The *Lawton* case was about the availability of a petition under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2002)) where a defendant believed he received ineffective assistance of counsel on an SDPA petition. *Lawton*, 212 Ill. 2d at 294-95. Neither of these cases supports Mr. White's argument that the State must specifically elect to proceed exclusively under the SDPA before a defendant can be ordered to participate in an SDPA evaluation.

¶ 62    Mr. White also quotes *Allen*, 478 U.S. at 370, in which the United States Supreme Court noted that, by committing a person under the SDPA, the State has "disavowed any interest in punishment." This language, in context, however, does not suggest that the State must "elect" at some specific point to proceed solely under the SDPA. In the passage that Mr. White cites from *Allen*, the Supreme Court examined what occurs *after* a person has been adjudicated sexually dangerous under the SDPA to confirm that SDPA proceedings are distinct from criminal cases. *Id.* at 369-70.

¶ 63    Thus, Mr. White cannot point to any legal precedent, and certainly no binding legal precedent, to support his argument that the State was required to elect to proceed solely under the SDPA at the time it filed its February 2010 petition or that its failure to do so violated Mr. White's constitutional rights.

¶ 64    At oral argument the State advised the court that, subsequent to Mr. White's case, the State has changed its operating procedure to file only one petition seeking both the evaluations contemplated by the SDPA and to have the defendant declared sexually dangerous and committed. While we understand that, at the time they file such a petition, the State may lack certain information regarding whether a criminal defendant suffers from a mental disorder, we believe the new procedure tracks the requirements of section 3 of the SDPA. It also ensures that both the State and the criminal defendant are on the same path at the same time, whether moving toward a criminal trial or a commitment hearing under the SDPA. If the State feels that the statute, as it is written, requires allegations that cannot in good faith be made until after an evaluation, the State's recourse is, naturally, with the legislature.

¶ 65                    3. State's Failure to Comply With the SDPA

¶ 66    During the hearing on Mr. White's motion to dismiss the State's February 2010 petition, defense counsel objected to Mr. White undergoing psychiatric evaluations prior to the State filing a petition that complied with the SDPA. Although Mr. White fails to argue on appeal specifically that the State failed to comply with the statutory requirements of the SDPA, because involuntary commitment proceedings "implicate substantial liberty interests" (*In re Robinson*, 151 Ill. 2d 126, 130 (1992)) and the issue of statutory compliance is intertwined with Mr. White's constitutional claims, we feel it necessary to address this issue.

¶ 67        As we described above, prior to the State filing a statutorily compliant petition in September 2010, the State sought, and the circuit court ordered, Mr. White to undergo evaluations that the SDPA explicitly provides are only to be conducted "[a]fter the filing of the petition" (725 ILCS 205/4 (West 2014)). Although it was an error for the State to seek Mr. White's evaluations prior to filing a petition that complied with the requirements of the SDPA, strict compliance with involuntary admission proceedings is not required in all instances. See *In re Lance H.*, 2014 IL 114899, ¶ 20 (concerning the involuntary admission provisions of the Mental Health and Developmental Disabilities Code (405 ILCS 5/1-100 *et seq.* (West 2010))); *In re Splett*, 143 Ill. 2d 225, 230-32 (1991) (same). A related question was discussed in *Splett*, where the State provided the respondent with "actual notice" of involuntary admission proceedings against him but failed to strictly comply with the statutory notice provisions. *Splett*, 143 Ill. 2d at 230-31. Our supreme court found that, despite the statutory noncompliance, the purposes of the notice provision were fulfilled and the respondent did not contend, nor could the court discern, that he was prejudiced by the lack of formal notice. *Id.* at 232. Therefore, the court concluded, the failure to serve the respondent with formal notice "must be considered harmless." *Id.*

¶ 68        It is apparent that an SDPA petition serves two key functions: to provide notice to the defendant that the State is electing to proceed under the SDPA and to set forth the allegations to be proved at the SDPA hearing. See 725 ILCS 205/3, 4, 5 (West 2010). Even if the February 2010 petition did not satisfy all the requirements to fully constitute an SDPA petition, it certainly provided notice to Mr. White that the evaluations the State sought for Mr. White, which he ultimately underwent, were for the purpose of evaluating him as a sexually dangerous person pursuant to the SDPA. And, following the evaluations, the State's September 2010 petition fully complied with the SDPA petition requirements to serve as the basis for the SDPA hearing, providing Mr. White with full notice of the allegations against him and ample time prior to the hearing to prepare.

¶ 69        We can also evaluate whether Mr. White was prejudiced by the State's statutory noncompliance by analyzing whether the result would have been different had the State strictly complied with SDPA procedure. The test for harmless error is whether it appears beyond a reasonable doubt that the error at issue did not contribute to the result reached by the circuit court. *In re Brandon P.*, 2014 IL 116653, ¶ 50. Having carefully reviewed the record, we see no way that this error may have adversely affected the result for Mr. White. As we noted above, after the evaluations were complete and the State filed its September 2010 petition, a full two years elapsed before Mr. White's SDPA hearing. Ultimately, Mr. White was found to be a sexually dangerous person as a result of the evidence put forth at this hearing. We are aware of no argument made by Mr. White, nor have we found anything in the record, to suggest that the evidence put forth at the hearing—namely, the evaluators' reports—would have been different had a proper SDPA petition been filed prior to the hearing. Mr. White was unable, either in his briefs on appeal or in response to specific questions at oral argument, to articulate any way in which the timing of the evaluations prejudiced him or could have possibly impacted the ultimate outcome of this case. Thus, any statutory error in ordering the psychiatric evaluations before an adequate petition was filed was harmless beyond a reasonable doubt.

¶ 70                                    CONCLUSION

¶ 71          For the foregoing reasons, we affirm the judgment of the trial court.

¶ 72          Affirmed.